Town of Rutland vs. Phyllis H. Fife.

Worcester.   October 14, 1980. — February 13, 1981.

Present: Brown, Perretta, & Kass, JJ.

*Municipal Corporations*, Conservation commission.   *Wetlands Protection
Act.   Practice, Civil*, Summary judgment, Stipulation.

In an action by a town seeking to enjoin the defendant from further con-
    struction work on and occupation of a home on a lot bordering a pond,
    the defendant was entitled to summary judgment where nothing in the
    stipulated facts and documents submitted by the parties was sufficient
    to warrant a finding that any part of the lot was a "freshwater
    wetland" within the meaning of G. L. c. 131, § 40.  [342-347]

Civil action commenced in the Superior Court on
June 20, 1978.

The case was heard by *Meagher*, J., on a motion for sum-
mary judgment.

*Gregor I. McGregor* for the defendant.

*Francis J. Cranston*, Town Counsel, for the plaintiff.

*Francis X. Bellotti*, Attorney General, *Stephen M.
Leonard & Malcolm Pittman*, Assistant Attorneys General,
for the Commonwealth, amicus curiae, submitted a brief.

Kass, J.   In this appeal from a summary judgment
entered in favor of Phyllis H. Fife, a landowner in Rutland,
the town raises questions concerning the extent of the ter-
ritorial jurisdiction of municipal conservation commissions
under the Wetlands Protection Act, G. L. c. 131, § 40.
The relevant facts are stipulated.

In 1973, Fife bought a lot containing approximately 2.4
acres adjoining Demond Pond in Rutland.  During July of
1977, she submitted plans for the placement on the site of a
mobile home and the installation of a septic system.  Fife
also applied to dig a water well on the property.  The board

of health of Rutland issued a permit to Fife on July 8, 1977, for her well and on September 15, 1977, for the installation of a septic tank. Fife obtained a building permit on October 15, 1977. Contractors whom she hired proceeded to work on the site, including the laying down of gravel for her driveway, piping and grading for the concrete foundation pad which would support the mobile home, installation of a drainage trench, and pouring of the foundation.

On December 9, 1977, the conservation commission issued a cease and desist order requiring that Fife proceed no further until such time as the conservation commission should issue an "order of conditions" regulating the work. See G. L. c. 131, § 40. Under protest, Fife filed with the conservation commission a "notice of intent," the prescribed document for obtaining an order of conditions. See *County Commrs. of Bristol* v. *Conservation Commn. of Dartmouth*, 380 Mass. 706, 707-708 (1980); 310 Code Mass. Regs. §§ 10.03(1) and 10.05(1) (1978). The conservation commission declined to issue an order of conditions and Fife determined to challenge the jurisdiction of the conservation commission by taking further steps toward occupancy of her mobile home. In response the conservation commission filed a complaint which sought to enjoin further construction work and occupation of the home.

If the work Fife did, and proposes to do, is not within the area protected by G. L. c. 131, § 40, a conservation commission is without jurisdiction to interfere.* Section 40, the first sentence of which we set forth in the margin,[1] protects

---

*We do not decide the question whether work must be done in a wetland in order to constitute alteration of that wetland.

[1] General Laws c. 131, § 40, first sentence, as appearing in St. 1974, c. 818, § 1, states: "No person shall remove, fill, dredge or alter any bank, fresh water wetland, coastal wetland, beach, dune, flat, marsh, meadow or swamp bordering on the ocean or on any estuary, creek, river, stream, pond or lake, or any land under said waters or any land subject to tidal action, coastal storm flowage, or flooding, other than in the course of maintaining, repairing or replacing, but not substantially changing or enlarging, an existing and lawfully located structure or facility used in the service of the public and used to provide electricity, gas, water,

three categories of wetlands: (1) land areas bordering on water bodies; (2) land under water bodies; and (3) land subject to tidal action, coastal storm flowage or flooding. In this case we are concerned with the first of these categories, that is, that portion of the statute which says that "[n]o person shall . . . alter any . . . fresh water wetland . . . or swamp bordering on . . . any . . . pond . . . ." No one suggests that the land is under a water body or subject to tidal action, coastal storm flowage or flooding. The status of the land as a fresh water wetland or swamp does not alone render it subject to the jurisdiction of the conservation commission; it must also "border" on a water body, in this case a pond. See for an illustrated explication, Massachusetts Audubon Society, A Guide to Understanding and Administering the Massachusetts Wetlands Protection Act 2-8 (1977).

The statute (§ 40) uses words and phrases applicable to the case at bar which are less than self-defining: e.g., "bordering," "bank," "freshwater wetland" and "swamp." The latter two terms are defined in the statute and we shall return to them later in this opinion. The words "bordering" and "bank" are defined in regulations promulgated by the Department of Environmental Quality Engineering. 310 Code Mass. Regs. 10.02(4) and (6) (1978).[2] "Bordering" is defined as including any land within "100 feet horizontally landward from the bank of any . . . swamp bordering the . . . pond . . . ."[3] It is irresistible to observe that one becomes mired in hopeless circularity when the word "bordering" is defined in terms of a beach, dune, flat, marsh, meadow or swamp "bordering" the ocean, estuary, creek, etc.

---

telephone, telegraph and other telecommunication services, without filing written notice of his intention to so remove, fill, dredge or alter, including such plans as may be necessary to describe such proposed activity and its effect on the environment and without receiving and complying with an order of conditions and provided all appeal periods have elapsed."

[2] General Laws c. 131, § 40, as appearing in St. 1974, c. 818, § 1, mandates the promulgation of rules and regulations "to effectuate the purposes of this section."

[3] Another definition of "bordering" based on the water elevation of a 100-year storm is not relevant to this case.

Fife reads the department's definition of "bordering" as placing land more than 100 feet distant from the edge of the pond beyond the reach of a conservation commission. Whatever the regulation may mean, neither its plain words nor common sense support that conclusion.[4] Many, if not most, beaches, dunes, flats, marshes, meadows and swamps are more than 100 feet wide. We think the key to the meaning of "bordering" is in the definition of "bank" which appears at 310 Code Mass. Regs. 10.02(4) (1978). There "bank" is defined "as land adjoining any body of water which serves to confine such water." Thus "bordering" means within a 100-foot rim or strip around the confining edge of — in this case — Demond Pond.[5] If, as to Fife's lot, the first 100 feet from the bank of Demond Pond are wetland in the statutory sense and the remainder of her lot is wetland, then the conservation commission has jurisdiction over Fife's entire lot. If the first 100 feet back from the edge of the pond is not wetland, then Fife's lot is not subject to the conservation commission's jurisdiction, even though a portion of her lot more than 100 feet distant from the pond has the physical characteristics of a wetland.

Since Fife's land is contiguous to the bank of Demond Pond and, therefore, "borders" the pond, the question before the judge was whether any portion of the locus within the 100-foot zone is wetland in the statutory sense.

"Freshwater wetlands," as defined in G. L. c. 131, § 40, as amended, include "swamps." The term "swamps," as defined in § 40, means (1) "areas where ground water is at or near the surface of the ground for a *significant part* of the growing season or where runoff water from surface drain-

---

[4] Much is said in Fife's brief about a policy which Rutland's conservation commission had adopted of not asserting jurisdiction over land more than 100 feet from a water body. The record concerning the existence of such a policy or the manner in which it was applied is far from clear and we decline to consider its legal significance, if any.

[5] The other kinds of water bodies from the banks of which one would have to calculate a similar rim or strip of land are oceans, estuaries, creeks, rivers, streams, lakes or land subject to tidal action.

age frequently collects above the soil surface, and where a *significant part* of the vegetational community is made up of" certain indicator plants.[6] (Emphasis added.)

In the proceedings before the judge on Fife's motion for summary judgment, the parties stipulated the facts disclosed by exhibits attached to the parties' trial briefs were stipulated facts for purposes of the judge's consideration of the motion for summary judgment. No document entitled "Stipulation" appears in the record but the text of the judgment itself says that the court "treats" the material in the trial briefs as stipulated facts and exhibits. That the judge did so with the consent of the parties is borne out by a stipulation filed by the parties including those briefs and exhibits in the record on appeal. That stipulation acknowledges the reference to the briefs and exhibits which appears in the judgment. Although most often summary judgment rests on affidavits to show that there is no genuine issue as to any material facts, other materials, e.g., pleadings, interrogatories, and depositions may establish that no material fact is in dispute. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-556 (1976). Mass.R.Civ.P. 56, 365 Mass. 824 (1974). Smith & Zobel, Rules Practice § 56.1 (1977). Stipulations are among such supporting materials. *Stubblefield* v. *Johnson-Fagg, Inc.*, 379 F.2d 270, 272 (10th Cir. 1967). *Munoz* v. *International Alliance of Theatrical Stage Employees*, 563 F.2d 205, 213 (5th Cir. 1977). 10 Wright & Miller, Federal Practice and Procedure § 2724 (1973).

Among the documents[7] placed before the court only one touched on the criteria established by G. L. c. 131, § 40,

---

[6] The indicator plants listed in § 40 (but which is not an all inclusive list) are: alder, ash, azalea, black alder, black spruce, button bush, American or white elm, white Hellebore, hemlock, highbush blueberry, larch, cowslip, poison sumac, red maple, skunk cabbage, sphagnum mosses, spicebush, black gum trupelo, sweet pepper bush, white cedar and willow.

[7] These included plans, the deed by which the premises were conveyed to Fife, correspondence with and from the Rutland board of health, permits, Fife's notice of intent, the conservation commission's response, cor-

for a protectable wetland: a letter to Rutland's town counsel from Ronald L. Lavigne, who identified himself as an environmental consultant and registered sanitarian. In view of the peculiar procedural circumstances under which the Lavigne letter was made available to the judge, i.e., by stipulation, the statements of fact are not subject to the competency tests which would apply to an affidavit filed in summary judgment proceedings. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). See *Stanton Indus., Inc.* v. *Columbus Mills, Inc.*, 4 Mass. App. Ct. 793, 794 (1976); *First Natl. Bank* v. *North Adams Hoosac Sav. Bank*, 7 Mass. App. Ct. 790, 793-794 (1979). Lavigne's assertions of fact, however, fall short of establishing that the defendant Fife's lot, or a portion of it, is a wetland. There is nothing in the Lavigne letter about the presence of ground water "at or near the surface of the ground for a significant part of the growing season." G. L. c. 131, § 40. The letter includes a statement that "the water table is less than [four] feet below grade." The reader is left to speculate as to when and how often the water table is at that level and whether this can be considered at or near the surface of the ground. As to indicator plants, Lavigne writes that he has identified alders, black alder, highbush blueberry, red maple and willow on the locus but he does not say whether these plants constitute "a significant part of the vegetational community." G. L. c. 131, § 40. For guidelines as to when a quantity of indicator plants in an area become significant, see Massachusetts Audubon Society, A Guide to Understanding and Administering the Massachusetts Wetlands Protection Act 3 (1977); Gaskell, Review [for the Commissioner of Environmental Management] of the Massachusetts Wetlands Restriction Program — Final Recommendations 7 (1978).[8]

respondence from the Department of Environmental Quality Engineering, photographs, correspondence from engineers, minutes of meetings of the conservation commission, and invoices for work done by contractors on the Fife site and for the mobile home.

[8] Gaskell prepared this report in his capacity as science advisor to the Department of the Attorney General.

The statute calls for some quantification. Lavigne's generalized assertion of opinion that the locus is a wetland does not carry the day as an assertion of the truth of the fact believed. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 n. 12 (1976). Compare *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726 (1979). On the basis of the stipulated documents, the judge correctly determined that there was no basis to conclude that the Fife parcel was a wetland. In these circumstances, the defendant was entitled to summary judgment.

Some of those documents do, indeed, suggest that Fife's septic system may result in violations of the State environmental code, G. L. c. 21A, § 13, as amended through St. 1979, c. 294, but that is a matter within the jurisdiction of a board of health, not a conservation commission.

*Judgment affirmed.*