ROBERT F. FOGELMAN vs. TOWN OF CHATHAM.

Barnstable. May 14, 1982. — April 5, 1983.

Present: ARMSTRONG, ROSE, & GREANEY, JJ.

*Zoning,* Special permit, Wetlands.

A provision of a zoning by-law which defined "inland wetlands" as in-
    cluding "any areas of peat, muck or natural growth indicative of wet-
    land" was not unconstitutionally vague. [588-591]
On appeal from a decision of a zoning board denying the plaintiff a special
    permit for construction of a house on certain property, the judge erred
    in concluding that the wetland setback requirements of the zoning by-
    law did not apply to the property in question because wetlands on that
    property were not designated on the town's "Conservancy District"
    map. [591-592]

CIVIL ACTION commenced in the Land Court Department
on June 13, 1980.

The case was heard by *Sullivan, J.*

*Frank J. Shealey,* Town Counsel, for the defendant.

*William F. Riley* for the plaintiff.

ARMSTRONG, J. The plaintiff was denied a permit to
build a guest house on a particular location on his lot bor-
dering Ryder's Cove in Chatham. The building inspector
and the board of appeals relied on a provision of the zoning
by-law which prohibited building within twenty-five feet of
wetland as defined in the by-law. The plaintiff brought an
action in the Land Court under G. L. c. 240, § 14A, and
c. 185, § 1(j 1/2), to determine the scope and validity of the
wetland setback provision as applied to his property.[1] The

---

[1] The plaintiff also brought an action in the Superior Court appealing
from the denial of a variance to build in the desired location despite the
wetland provision of the by-law. This action was transferred to the Land
Court by agreement of the parties and was heard together with the Land
Court case on a statement of agreed facts. The Land Court judge ruled

judge ruled that the twenty-five foot setback requirement did not apply to the plaintiff's land, which concededly contains wetland either under or within twenty-five feet of the proposed building location,[2] because the plaintiff's land was not designated on the town's "Conservancy District" map. The case before us is on the town's appeal.

The decision in the Land Court focused on the difficulty of applying the definition of "inland wetlands" appearing in § 1.63 of the by-law: "Any marsh, meadow or swamp bordering on inland waters or that portion of any bank which touches any inland waters, or any marsh, meadow or swamp subject to flooding by fresh water [or any areas of peat, muck or natural growth indicative of wetland]." The brackets, inserted by us, mark the portion of the definition the judge held so vague as to give rise to constitutional problems, pointing out that three trained botanists, applying the natural-growth test, had determined three different wetlands boundary lines, which, although they converged at

that the denial of the variance was proper, there being, for example, no sufficient hardship, as the plaintiff's lot contains ample upland to build the guest house in another location. No appeal has been taken from the ensuing judgment.

[2] The wetlands boundary was drawn in different places by different experts, but even the boundary drawn by the expert most favorable to the plaintiff (Howard Hedmond, an environmental engineer engaged by the plaintiff) fell within twenty-five feet of (indeed, at one point touching or virtually touching) the proposed building location. Donald G. Schall, director of the Cape Cod Museum of Natural History in Brewster, at the request of the Chatham conservation commission, located the wetlands boundary inland of Hedmond's, encompassing about one quarter of the proposed building location; while Brian Donahue, a biologist employed by the Commonwealth's Department of Environmental Quality Engineering, located the wetlands boundary furthest inland, encompassing about half the building area. The department, charged with responsibility for enforcing the wetlands protection act (the State "Hatch Act," G. L. c. 131, § 40), issued an order permitting construction at the desired location, provided that the house was set on driven piles, with no change in contour or fill of the wetland, and provided that the septic system leaching field was located in upland at least twenty-five feet from wetland at its nearest point. What is at issue in this case, of course, is not the State wetlands protection scheme but the extent and validity of the more restrictive Chatham zoning by-law.

some points, appear to have diverged by as much as fifty feet at others. Citing *O'Connell* v. *Brockton Bd. of Appeals,* 344 Mass. 208 (1962), and *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329 (1962), the judge held that portion of the by-law to fail the test that (in her words) "[a zoning by-law] must be framed in such a way that the standards to be met are clear both to the regulatory authority and to those subject to its jurisdiction." The uncertainty could be cured, she ruled, if the wetlands which form the basis of the twenty-five foot setback requirement were limited to those shown on the conservancy district map on file in the town clerk's office. The conservancy district, an overlay district which is supposed to include all "inland wetlands" as defined in § 1.63, as well as some other categories of terrain,[3] did not as drawn on the relevant map include the plaintiff's land.

---

[3] The relevant sections read as follows:

"[§] 3.43 Location

Conservancy Districts are designed specifically on the Protective By-Law Map as most recently amended to include all of the salt water shoreline of the Town and inland wetlands consisting of all portions of the Town bordering inland water, swamp, marsh or wetland as defined in 1.63 and identified on the United States Geological Map 1947 by number and recorded by corresponding notes, said map and notes on file in the Town Clerk's Office. The Building Inspector may require sufficient topographic data in order to establish the exact location of any contour line bounding a Conservancy District in order to establish the precise location of said line on any lot affected thereby before issuing a building permit for any building or structures to be located thereon.

The portion of a lot lying within a Conservancy District shall be considered a part of the lot in computing the lot area for compliance with the square footage requirements.

".   .   .   .

"[§] 3.44 Conservancy Contour Line Bounds

(1) Coastal Wetland Conservancy Districts shall be those areas lying below two feet (2') above mean high water, said areas being further delineated as following the contour line two feet (2') above the plane of mean high water around said areas. When a bank exceeds two feet (2') in height, the Conservancy District boundary shall be the top of the bank.

(2) All inland wetlands as defined in 1.63 and those areas lying below two feet (2') above the water level of water courses and/or ponds (elevation of water level of ponds as established for each pond and recorded in

It is not clear that the interpretation adopted by the judge could succeed in avoiding a problem of vagueness in the § 1.63 definition because the conservancy district is itself defined by denotation, one of the constituents being "wetlands as defined in § 1.63." See note 3, *supra*. But for the reasons which follow we think that whatever vagueness is exhibited by the definition is not of the constitutionally disabling type.

A zoning by-law starts with a presumption of constitutional validity. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 594-595 (1949). *Doliner* v. *Town Clerk of Millis,* 343 Mass. 10, 14 (1961). In general it will be held valid if there is a substantial relation between it and the furtherance of any of the general objectives of The Zoning Act. *Sinn* v. *Selectmen of Acton,* 357 Mass. 606, 609 (1970). It is not questioned that The Zoning Act makes protection of wetlands a valid objective of local zoning by-laws. *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 636-637 (1970). *Golden* v. *Selectmen of Falmouth,* 358 Mass. 519, 522-523 (1970). *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221, 233 (1972), cert. denied, 409 U.S. 1108 (1973). *S. Volpe & Co.* v. *Board of Appeals of Wareham,* 4 Mass. App. Ct. 357, 360 (1976).

It is true, of course, that a zoning ordinance or by-law may not be cast in such vague terms that men of common intelligence must necessarily guess at its meaning and differ as to its application. *O'Connell* v. *Brockton Bd. of Appeals,* 344 Mass. at 212. But this does not mean that the application of the zoning ordinance or by-law may not validly call for the exercise of judgment (see *Zaltman* v. *Board of Appeals of Stoneham,* 357 Mass. 482, 483-485 [1970]; *S. Volpe & Co.* v. *Board of Appeals of Wareham,* 4 Mass. App. Ct. at 362) or require findings of fact to determine whether particular land falls within the regulatory framework estab-

---

the Town Clerk's Office as a part of this By-Law). When a bank of a pond and/or water course exceeds two feet (2') in height, the Conservancy District boundary shall be the top of the bank."

lished by the ordinance or by-law. See, e.g., *Turnpike Realty Co.* v. *Dedham,* 362 Mass. at 234 (whether land was "subject to seasonal or periodic flooding" and thus properly included in a flood plain district).

A law is not unconstitutionally vague simply because it presents some questions as to its application in particular instances. Courts and administrative boards draw lines and resolve ambiguities every day. See *North Landers Corp.* v. *Planning Bd. of Falmouth,* 382 Mass. 432, 440 (1981). The zoning provision held unconstitutionally vague in *O'Connell* v. *Brockton Bd. of Appeals, supra,* was unusual, in that it offered no clue as to what concept the city's legislative body may have had in mind in adopting it. (The provision purported to determine a building setback line within city blocks by reference to existing buildings, but the manner of determining the line was shrouded in obscurity.) A recent analog was *Commonwealth* v. *Gagnon,* 387 Mass. 567, S.C., 387 Mass. 768 (1982), which held the statutorily prescribed punishment for distribution of heroin unconstitutionally vague, because one could only speculate as to the punishment the Legislature may have intended by the impenetrable language employed to express it. Interstices are filled in routinely, lines are drawn, and simple ambiguities resolved; but where the core concept is indecipherable the court will not supply one of its own creation. *Id.* at 772. Cases of that type are unusual,[4] and this is not one of them. The definition of wetland in terms of natural growth, while not self-explanatory to most laymen, has respected antecedents in key definitions in the Commonwealth's Wetlands Protection Act, G. L. c. 131, § 40, a law referred to

---

[4] A familiar exception to the usual rule that courts will resolve ambiguities and determine the application of vague terms in statutes on a case-by-case basis occurs in the context of criminal statutes impinging on the exercises of First Amendment rights. There courts will ordinarily hold the law unconstitutional because to do otherwise would have a deterrent, or "chilling," effect on the exercise of First Amendment rights due to the threat of the statute's *possible* application. See *Baggett* v. *Bullitt,* 377 U.S. 360, 372 (1964); *Opinion of the Justices,* 362 Mass. 891, 894-895 (1972); *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 586 n.4 (1975).

several times in the provisions of the town by-law relating to the conservancy district and which may justifiably be used to supply explicit standards for applying the by-law's phrase, "natural growth indicative of wetland." See *Rutland* v. *Fife*, 11 Mass. App. Ct. 341, 345 n.6, *S.C.*, 385 Mass. 1010 (1981); *Farrugia* v. *Board of Appeals of Marshfield*, 14 Mass. App. Ct. 720, 722 (1982).

The plaintiff mistakenly relies on *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962), *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433, 438 (1975), and *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 308-309 (1976). Those cases dealt with regulations of planning boards under the Subdivision Control Law, and applied a standard ("comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them . . . ," *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, *supra* at 334) that is held to invalidate regulations which are not definite in application and which leave substantial discretion to the planning board.[5] The standard of specificity required of planning board regulations, having its origin in the legislative history of the Subdivision Control Law (as to which see *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 153-155 [1959]; *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 162-164 [1959]), has never been applied to zoning ordinances and by-laws. The latter are acts of legislative bodies of cities and towns and are more properly and generally held to the standards applicable to acts of the General Court. As to these it is enough if a general policy is stated with reasonable clarity; the detailed application of that policy to particular fact situations may appropriately be left to administrative bodies and the courts. Compare *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. at 638. The

---

[5] As to the limits of specificity required by that standard, see *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. at 440-445.

definition of inland wetlands in § 1.63 complies with such a standard and is not subject to attack for vagueness.

There remains the question whether the conclusion reached by the judge is required as matter of construction of the setback provision of the by-law. The setback requirement is found in appendix II of the by-law, the table which sets out the dimensional requirements applicable to buildings in the various zoning districts (including lot size, frontage, frontyard, sideyard, and wetlands setbacks, maximum lot coverage, and maximum building heights). The relevant column is labeled, "Min. Bldg. Setbacks (in feet), Fresh & Saltwater and Wetlands," and explanatory notes placed after "Fresh" and after "Wetlands" both state, in relevant part, "Salt water shall be mean high water level; wetland shall be as described in Section 3.44 paragraphs 1 and 2, and defined in Section 1.63."

The two paragraphs of section 3.44, reproduced in note 3, *supra*, set out the method whereby the boundary lines of the conservancy district are to be fixed. With respect to lands bordering salt water, the boundary line is drawn on a plane two feet above mean high water; with respect to inland waters and surrounding land, the boundary line is drawn on a plane two feet above the water level recorded in the office of the town clerk; and with respect to inland wetlands, the boundary line is drawn at the edge of the inland wetland as defined in § 1.63. "Inland wetlands," as there defined, do not include ponds or other inland waters, but only marshes, meadows, swamps and banks bordering thereon; and they do not include marshes, banks, or other lands bordering on salt water.

In defining the "wetlands" which were to be the subject of the setback provision, it is not entirely clear why the draftsmen of the zoning by-law thought it necessary to include references to both § 3.44, par. 2, and § 1.63, in view of the fact that § 3.44, par. 2, includes all inland wetlands as defined in § 1.63. If the definition is to be read with emphasis on the "and," the words "as described in § 3.44, paragraphs 1 and 2, *and* as defined in § 1.63" would exclude

coastal wetlands, such as saltmarsh, as well as all inland conservancy district land other than "inland wetlands." Such a reading would make the reference to § 3.44, paragraphs 1 and 2 superfluous, and would, in our opinion, do more violence to the probable intent of the draftsmen than a reading which makes the reference to § 1.63 superfluous.

The difficulty with the trial judge's construction — that inland wetlands are not subject to setback unless shown on the conservancy district map — is that it bears no relation to the words used and does nothing to resolve the apparent redundancy that gives rise to the problem. Moreover, it is § 3.43, not § 3.44, which establishes the conservancy district map. If the draftsmen's intent were to make the map the criterion for application of the setback, the definition of "wetland" would presumably have referred to § 3.43. By referring instead to § 3.44, the draftsmen must have intended the setback to apply to the lands described in § 3.44, regardles whether the lands were depicted on the map.

We hold that the sense of the definition of "wetlands", as used in the setback provision, is that it includes both "inland wetlands" as defined in § 1.63 and all other lands which comprise the conservancy district as defined in § 3.44. Recognizing that that construction does not wholly eliminate the problem of redundancy in the definition, we feel nevertheless that it best effectuates the apparent purpose of the regulatory scheme read as a whole.

The judgment is reversed, and a new judgment is to enter declaring that the setback provision and the definition of inland wetlands are valid exercises of the town's zoning power, that the setback provision applies to the plaintiff's property, and that the plaintiff is not entitled to build his proposed guest house in the location indicated in his application for a building permit.

*So ordered.*