21 Mass. App. Ct. 701 (1986)
490 N.E.2d 451
THE SOUTHERN NEW ENGLAND CONFERENCE ASSOCIATION OF SEVENTH-DAY ADVENTISTS
vs.
TOWN OF BURLINGTON.
Appeals Court of Massachusetts, Suffolk.
January 9, 1986.
March 18, 1986.
Present: GREANEY, C.J., GRANT, & ARMSTRONG, JJ.
Andrew McGinnis for the plaintiff.
Elizabeth A. Lane for the defendant.
GREANEY, C.J.
The Southern New England Conference Association of Seventh-Day Adventists (church) wishes to construct *702 a building, with related parking area, on land that the town of Burlington (town) classifies as wetland under its zoning by-law. The church was denied the special permit required by the wetlands provisions of the town's zoning by-law (wetlands by-law). The church filed an action in the Land Court pursuant to G.L.c. 240, § 14A, and c. 185, § 1 (j1/2), seeking a determination that the second paragraph of G.L.c. 40A, § 3, as appearing in St. 1975, c. 808, § 3, which prohibits a local zoning by-law from "regulat[ing] or restrict[ing] the use of land or structures for religious ... purposes" renders the church exempt from the town's wetlands by-law. Alternatively, the church sought to invalidate the town's classification of its land as wetlands. A judge of the Land Court concluded: (1) that G.L.c. 40A, § 3, did not exempt the church from the town's wetlands by-law and (2) that the town's classification of the church's land under the by-law was valid.
The case was presented on a statement of agreed facts and exhibits. In 1978, the church purchased an approximately two-acre undeveloped parcel of land located in a residential district of the town. The parcel is roughly rectangular in shape and is bordered on the southeast by Wilmington Road, a public way, on the northeast by several residences, and on the northwest and southwest by land and a transmission line owned by Boston Edison Company.[1] A brook meanders through the middle of the property. In 1979, the town amended its zoning by-law to superimpose a wetlands district over the zoning districts in the area. By means of § 8.2.2 of the by-law, the town classified wetlands as follows: "all lands shown with the boundaries designated as wetlands on the Topographic Sheets, Town of Burlington entitled Wetlands 1977. These maps, as may be amended from time to time, are hereby made a part of this By-law. The wetlands have been delineated in accordance with the definitions in Chapter 131, Section 40 of the Massachusetts General Laws."[2] Virtually the entire front portion of the parcel *703 is classified as wetland on the town's 1977 topographic sheets. The back third of the parcel is largely outside the wetlands district, and the parties agree that the middle third of the parcel (through which the brook passes) constitutes wetlands as such lands are defined in G.L.c. 131, § 40, as appearing in St. 1974, c. 818, § 1. (The shaded area on sketch A depicts the wetlands district and its contours as they relate to the church's land.) There is no procedure in the by-law by which a landowner can appeal from the town's inclusion of land within a wetlands district. Permissible uses within the wetlands district are limited by § 4.4.0 of the by-law to uses compatible with wetlands, and exclude any buildings except "[s]tructures for essential services" by special permit.
As required by the by-law, the church submitted a site plan to the town's planning board for the construction on the parcel of its building with related parking area. In October, 1982, the planning board withheld approval because the church's plan violated the wetlands by-law. In November, 1982, the church, at its own expense, retained the firm of consulting engineers which had prepared the original 1977 topographic sheets to resurvey the parcel. After additional survey work, that firm concluded that the original topographic sheet "does not accurately depict the exact location and configuration of the `existing brook' on the face of the earth." The firm recommended that the boundary line of the wetlands be relocated approximately 150 feet back from the front of the parcel toward the brook. A second plan was prepared (shown on sketch B appended to this opinion) which shows three boundaries on the parcel: the original wetlands boundary as shown in the 1977 topographic sheets; the wetlands boundary established in November, 1982, after the parcel had been resurveyed; and *704 the 100-foot boundary for the "buffer zone" designated by 310 Code Mass. Regs. § 10.04 (1983).[3] According to the engineering firm, the new "map [sketch B] generally delineates the location of [the] `existing brook,' the `wetland boundary,' and the boundary of the `bordering' lands which are within 100 feet of the wetland, and thus under the jurisdiction of [c.] 131, [§] 40, and associated administrative rules." The parties have stipulated that the front portion of the parcel "is not wet by the statutory definition [in G.L.c. 131, § 40] but a major portion of it is within the overlay [w]etland [d]istrict as shown on the [t]opographical [s]heets referenced in [§] 8.2 of the [b]y-law."[4]
The church applied for placement of the wetlands boundary at the line established by the November, 1982, survey. An article for presentation to the town meeting to relocate the boundary was prepared. The planning board and conservation commission recommended passage of the article. On January 10, 1983, the town meeting refused to take any action under the article. This lawsuit ensued.
1. The church maintains that it is exempt from the wetlands by-law of Burlington because of the provisions of the second paragraph of G.L.c. 40A, § 3, as appearing in St. 1975 c. 808, § 3. That provision reads, in pertinent part, as follows: "No zoning ordinance or by-law shall regulate or restrict ... the use of land or structures for religious purposes ... provided, however, that such land or structures may be subject to reasonable *705 regulations concerning the bulk and height of structures and determining yard sizes, lot area, set backs, open space, parking and building coverage requirements." The church considers the provision's literal language as precluding any regulation of land or structures intended for religious use (except for reasonable dimensional restrictions), leaving its land subject to regulation only under G.L.c. 131, § 40, the Wetlands Protection Act, and associated administrative regulations.[5] The church concedes that the town may regulate its land by lawful wetlands restrictions promulgated in the form of a general by-law. See Lovequist v. Conservation Commn. of Dennis, 379 Mass. 7, 12 (1979). However, the church urges that the town lacked the power to adopt a zoning by-law which regulates its use of the land as wetlands because any such power is expressly denied to the town by G.L.c. 40A, § 3.
The two laws  the Wetlands Protection Act and G.L.c. 40A, § 3  address differing, noncompeting, interests. Section 3 codifies the case law interpreting its statutory predecessor, the so-called Dover amendment, G.L.c. 40A, § 25, as appearing in St. 1950, c. 325, § 1. See Attorney Gen. v. Dover, 327 Mass. 601 (1951); Sisters of the Holy Cross v. Brookline, 347 Mass. 486 (1964); The Bible Speaks v. Board of Appeals of Lenox, 8 Mass. App. Ct. 19 (1979). Cf. Commissioner of Code Inspection of Worcester v. Worcester Dynamy, Inc., 11 Mass. App. Ct. 97 (1980); Newbury Junior College *706 v. Brookline, 19 Mass. App. Ct. 197 (1985). The amendment insures that a municipality will not express "preferences as to what kind of ... religious denominations it will welcome," The Bible Speaks v. Board of Appeals of Lenox, supra at 33, by providing that religious uses can be placed at suitable sites in a community, subject only to reasonable dimensional regulations.
The Wetlands Protection Act, G.L.c. 131, § 40, has no concern for particular land uses. That act has the broader purpose of protecting wetlands from the destructive intrusion usually associated with Twentieth Century development. In preserving land, the act is use-neutral  if a parcel has been properly denominated wetlands, all use is barred (or limited to activities compatible with the wetlands) without regard for the type of use intended, the propriety of the use in other circumstances or the identity of the landowner.[6] This is accomplished by the creation of wetlands (or similar conservancy) protection districts which transcend zoning district boundaries. All activities within the protected district inimical to the wetlands are prohibited, even though the activities might otherwise be permitted on the parcel or elsewhere in the district in which it lies.
In this context a municipality's power to protect wetlands becomes apparent. That power is shared jointly with the Commonwealth, and a municipality may impose more stringent controls than those established by G.L.c. 131, § 40, and, in proper cases, may even "prohibit outright any disturbance of covered lands." Lovequist v. Conservation Commn. of Dennis, 379 Mass. at 15. In conferring authority on a municipality to preserve its wetlands, either by means of zoning power, see Fogelman v. Chatham, 15 Mass. App. Ct. 585, 588 (1983), *707 and cases cited, or by means of general legislative power, see Lovequist v. Conservation Commn. of Dennis, supra at 12, we think the Legislature recognized that the substantive validity of any local wetlands regulation should not turn on which of the two forms of regulation is chosen, so long as the dominant purpose of the local by-law is the proper protection of wetlands values. It follows that the Legislature did not intend that § 3 of c. 40A exempt a religious use from lawful wetlands control under a local zoning by-law.[7]
2. We turn to the question of the classification of the land by the town. As previously noted, an article submitted by the church to the town meeting on January 10, 1983, to relocate the wetland boundary to the line designated "wetland boundary November, 1982" on sketch B was rejected by the town.
The church argues about the meaning and effect to be given to the town meeting vote. It characterizes the problem as "a mapping error" and maintains that the last sentence in § 8.2.2 of the by-law (referring to wetlands in terms of the definitions in G.L.c. 131, § 40) is the governing standard. The church reasons that by choosing "the convenience of doing nothing," *708 the town, in effect, adopted a different standard for the church's land from that which is used for similar districts elsewhere in the town. As a consequence, the church suggests that the wetlands boundary which encompasses its land is invalid because the town has set that boundary in an arbitrary manner. The church concludes that the town's failure to adopt the by-law amendment required the court to enforce the boundary most favorable to the landowner.
We do not think the case should turn on the proceedings at the January 10, 1983, town meeting. At the meeting, the town simply voted not to establish a new boundary for the wetlands district which includes the church's land. We know that the town meeting had before it a report from the planning board (see the third paragraph of G.L.c. 40A, § 5) concurred in by the conservation commission, that recommended passage of the article. We also know from the statement of agreed facts that when the article came up "abutters spoke in opposition." We have no knowledge of what may have motivated the town meeting to reject the article. Notwithstanding the planning board's report, the voters may have considered conditions actually existing, or likely to exist, on the parcel which might properly render the portion in controversy subject to wetlands protection. Or the voters may have chosen to reject the article because of irrelevant considerations. The reasons for their action are immaterial. The vote rejecting the article constitutes the deliberative act of a legislative body. A court will not set such a vote aside, even if it could be shown (which it has not been) that the vote may have been influenced by mistaken beliefs. See Knowles v. Codex Corp., 12 Mass. App. Ct. 493, 498 (1981). See also Hebb v. Lamport, 4 Mass. App. Ct. 202, 206-207 (1976). The net result of the vote was to leave § 8.2.2 intact. Section 8.2.2 of the by-law meant the same thing the day after the town meeting as it did the day before.
Proper resolution of the case, therefore, does not depend on the meaning to be ascribed to the town meeting's action in 1983 but rather on the interpretation to be given to § 8.2.2. By its references to the 1977 topographic sheets as establishing the wetland boundaries, and to the delineation of wetlands in *709 accordance with the definitions in G.L.c. 131, § 40, the provision "in certain aspects lacks precision and verbal consistency." Lapierre v. Massachusetts Commn. Against Discrimination, 354 Mass. 165, 174 (1968). We must construe the provision to effectuate the town's intent in adopting the by-law. See Industrial Fin. Corp. v. State Tax Commn., 367 Mass. 360, 364 (1975).
We think that the part of the by-law which specifically provides that the wetlands boundaries are as they appear on the topographical sheets prevails over the general reference to G.L.c. 131, § 40. As such, the boundary established by the 1977 topographic sheet establishes the relevant wetlands boundary under the by-law. This construction is supported by § 8.2.1 of the by-law, see note 2, supra, which indicates that the by-law seeks, among other goals, to preserve water courses "and their adjoining lands" (emphasis supplied), and to protect land "against the hazards of flooding and contamination."[8] It is perhaps unfortunate that, as we have noted, the by-law contains no provision for appeal from a wetlands boundary determination.
What has been said thus far covers the facial validity and meaning of § 8.2.2. The remaining question concerns the power of the town to regulate the church's land under § 8.2.2 by a wetlands boundary that appears to encompass a considerable portion of dry land located in the front third of the parcel. That portion exceeds, by at least forty feet, the 100 foot buffer zone for wetlands in which State law permits some construction subject to approval by the local conservation commission, see note 3, supra. The consideration that the by-law has a wider sweep than the State law on the subject is not decisive, however. As previously noted, protection of wetlands is a valid objective *710 of local zoning by-laws, see Fogelman v. Chatham, 15 Mass. App. Ct. at 588, and cases cited, and a municipality can adopt more stringent wetlands controls than those established in the Wetlands Protection Act. See Lovequist v. Conservation Commn. of Dennis, 379 Mass. at 15. In general, a wetlands zoning by-law will be held valid if there is a substantial relation between it and the furtherance of any of the objectives of wetlands protection. Fogelman v. Chatham, supra at 588.
The question comes down to whether the boundary established by the by-law is valid as applied to the church's land, that is: Does the by-law have the required relationship with a reasonable purpose of wetlands protection? The church argues that the by-law is defective in this respect and, as a result, its application to the church's parcel is arbitrary. However, there is nothing in the statement of agreed facts or in the exhibits which provides a factual basis for an informed decision of this question. The record is concerned only with the general condition of the parcel, its remapping, and other events leading up to the presentation of the article to the town meeting. In the absence of any evidence bearing on the issue of the lawfulness of the application of the by-law to set the wetlands boundary, any attempt at decision on this record would require speculation and would be unfair to one party or the other.[9] Under G.L.c. 240, § 14A, and c. 185, § 1(j1/2), the church, of course, has the right in this action to seek a determination of the validity of the by-law as applied to its land. The portion of the amended judgment which could be taken as deciding that issue appears to have been entered prematurely.
The first paragraph of the amended judgment is affirmed. The church may move in the Land Court to secure a determination of the validity of § 8.2.2 of the by-law as applied to its land. If such a motion is made, the second paragraph of the amended judgment is to be vacated and, after such further *711 proceedings as may be appropriate, a new judgment is to be entered on that question. If no motion is brought by the church within thirty days from the date of our rescript, the second paragraph of the amended judgment is to be affirmed.
So ordered.

*712 APPENDIX

NOTES
[1] The parcel is shown on sketch A appended to this opinion.
[2] Section 8.2.1 sets forth the purpose of the wetlands by-law as follows: "[T]o preserve and protect the water bodies, water courses and wetlands in the Town of Burlington and their adjoining lands.

"To protect the health and safety of persons and property against the hazards of flooding and contamination.
"To preserve and maintain the groundwater table for water supply purposes.
"To protect the natural environment.
"To conserve the watershed area of the Town of Burlington for the health, safety, and welfare of the public."
[3] Under this regulation, promulgated by the Department of Environmental Quality Engineering, a "buffer zone" is defined as "that area of land extending one hundred (100) feet horizontally outward from the boundary of any area specified in 310 CMR 10.02(1)(a)." The latter regulation defines the areas subject to the protection of the Wetlands Protection Act, and includes banks bordering on any stream. Under 310 Code Mass. Regs. § 10.02(2)(b) (1983), any activity within the "buffer zone" requires the filing of a "Notice of Intent" with the local conservation commission, and compliance with the procedures specified in 310 Code Mass. Regs. § 10.03 (1983), to obtain a permit to proceed with the work. The provision for a "buffer zone" does not appear in G.L.c. 131, § 40, and is a creation of the department in aid of its administrative implementation of the Wetlands Protection Act.
[4] It is also agreed that, as presently sited, a portion of the church's project is within the buffer zone and that the western corner of the proposed parking area is in the middle of the brook.
[5] In view of G.L.c. 131, §§ 40 and 40A, and 310 Code Mass. Regs. §§ 10 et seq. (1983), the church appears to agree that it would have to file a "Notice of Intent" with the conservation commission of Burlington and obtain a permit from the commission to construct its project on the land contained within the 100 foot buffer zone. At one point, the church had obtained a permit from the commission to proceed with its project subject to the commission's "Order of Conditions [Under] Wetlands Protection Act." The church, nevertheless, could not proceed because of the use limitations imposed on the entire wetlands district by § 4.4.0 of the by-law. If the church's argument as to the G.L.c. 40A, § 3, is rejected, and if the problem with the placement of the wetlands district boundary is eventually resolved, the church, in view of an error in its original plans which placed part of its project in the brook, see note 4, supra, will have to proceed anew with the siting of its project and with obtaining appropriate wetlands approvals.
[6] The sweep and neutrality of the act can be seen in the provision of G.L.c. 131, § 40, that "[n]o person" shall disturb a wetland without proper permission. The term "person" is broadly defined in § 40 to "include any individual, group of individuals, association, partnership, corporation, company, business organization, trust, estate, the commonwealth or political subdivision thereof, administrative agency, public or quasi-public corporation or body, or any other legal entity or its legal representative, agents or assigns." This definition plainly includes the church.
[7] It cannot be said that anything in the Attorney Gen. v. Dover decision, supra, or in the Sisters of the Holy Cross v. Brookline decision, supra, the two leading cases on the meaning of what is now § 3 of c. 40A, contemplated that the religious use exemption should apply to wetlands protection. These cases were decided seventeen and three years, respectively, before the 1967 enactment of the Wetlands Protection Act.

Further support for the conclusion that § 3 was not intended to override local wetlands protection by means of a zoning by-law can be discerned from the last sentence of the first paragraph of § 3 of c. 40A, and from the eighteenth paragraph of c. 131, § 40, as appearing in St. 1975, c. 363, § 2, dealing with the preservation of agricultural uses. These passages appear to reflect a desire on the Legislature's part to strike a balance between competing preservation policies (i.e., those of conserving agricultural lands while preserving wetlands). The laws appear to insure minimum regulation of agricultural lands but render encroachment of these lands onto wetlands subject to State scrutiny. There is no similar exemption for religious uses, and the church's desire to erect its building and attendant parking lot presents no such competing preservation interest. Finally, there is nothing in the history of c. 40A, § 3, which suggests an intention on the part of the Legislature to permit a religious organization to make use of a given parcel when no other person or organization would be permitted to use the same parcel for any purpose.
[8] In arriving at this construction, we have not placed reliance on the action of the town meeting because of the settled rule of statutory construction that rejection of a proposed by-law amendment has little or no bearing on the proper interpretation of an existing by-law. See Framingham Clinic v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283, 295 (1981). See also 2A Sands, Sutherland Statutory Construction § 48.18 (4th ed. 1984 and 1985 Supp.); Dickerson, The Interpretation and Application of Statutes 179-183 (1975).
[9] The church maintains that, in these circumstances, we should enforce a boundary that is most favorable to the landowner. The case law does not favor such a result, see Turnpike Realty Co. v. Dedham, 363 Mass. 221, 223 (1972), cert. denied, 409 U.S. 1108 (1973), and the other cases cited by the church do not support the conclusion the church advances.