**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

Nos. 04-1010, 04-1011

CONCRETE SYSTEMS, INC.,

Plaintiff, Appellant/Cross-Appellee,

v.

PAVESTONE COMPANY, L.P., and
PAVESTONE GENERAL INC.,

Defendants, Appellees/Cross-Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Selya, Dyk,[*] and Howard, Circuit Judges.

---

Evan Slavitt with whom Richard P. O'Neil and Bodoff & Slavitt LLP were on brief, for appellant.
Scott J. Tucker with whom Scott H. Kremer and Tucker, Heifetz & Saltzman, LLP were on brief, for appellees.

---

September 29, 2004

---

[*]Of the Federal Circuit, sitting by designation.

**Per Curiam**.  This diversity case stems from a failed real estate transaction between Concrete Systems Inc. ("CSI") and Pavestone Co. ("Pavestone").  CSI owned a parcel of land on Pierce Avenue in Lakeville, Massachusetts ("the property"), that was equipped to operate as a concrete plant.  Pavestone, a Texas company, wished to purchase the property so that it could increase its concrete business in the region, but after placing a $50,000 deposit and signing a purchase and sale agreement, Pavestone decided that it could not proceed with the closing.

After the sale fell through, CSI sued Pavestone on three theories:  (1) Pavestone breached its obligation to purchase the property ("failure-to-close claims"); (2) Pavestone committed acts on the property that resulted in Lakeville's rezoning the property from industrial to residential, thereby reducing its value ("rezoning claims"); and (3) Pavestone failed to return the property to its pre-existing condition and failed to return certain equipment that it removed from the property after it decided not to close ("condition-of-the-property claims").  The second and third theories relate to Pavestone's work on the property during the pre-closing period -- a period in which Pavestone was authorized under the purchase and sale agreement to perform work on the property.

In a series of separate rulings, the district court dismissed the failure-to-close claims, to the extent that they sought damages in excess of Pavestone's $50,000 deposit, because

-2-

the purchase and sale agreement contained a liquidated damages clause limiting the damages for failing to close to the deposit amount; granted summary judgment on the rezoning claims because CSI could not establish that Pavestone's pre-closing work on the property had caused Lakeville to rezone the property; and dismissed the condition-of-the-property claims because of CSI's discovery violations. As a result of these rulings, the case went to trial only on the failure-to-close claims with a damage cap of $50,000. After a short jury trial, CSI prevailed.

The district court subsequently entered judgment for CSI in the amount of $50,000 plus 12 percent prejudgment interest pursuant to Mass. Gen. L. ch. 231, § 6C. Pavestone then moved to amend this judgment, arguing that it was excessive because CSI had earned interest on the $50,000 deposit during the prejudgment period. The court agreed and entered an amended judgment reducing the award by the actual amount of interest earned by CSI. CSI timely appealed and now challenges the district court's rulings limiting the available damages on the failure-to-close claims, granting summary judgment on the rezoning claims, and reducing the amount of prejudgment interest. We consider these challenges in turn.

CSI contends that the district court erred in granting Pavestone's motion to dismiss the failure-to-close claims to the extent that they sought damages in excess of $50,000. CSI asserts

that this ruling was inappropriate because the liquidated damages clause was an affirmative defense, and a court "may not delve into the merits of possible defenses" at the motion to dismiss stage. It further claims that, even if the court could grant such a motion, it was wrong to do so in this case. Our review is de novo. See Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004).

"[A]n affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); see also Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001); Cavanagh v. Cavanagh, 489 N.E.2d 671, 673 (Mass. 1986). So long as the facts establishing the defense appear on the face of the complaint and the court's review leaves "no doubt" that the plaintiff's claim is barred by the asserted defense, granting a motion to dismiss is appropriate. Blackstone Realty, 244 F.3d at 197.

The operative complaint included the text of the liquidated damages clause and had attached to it a copy of the purchase and sale agreement containing the clause. See Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001) (stating that documents attached to the complaint may be considered on a motion to dismiss). The facts establishing the existence and scope of the liquidated damages clause were thus apparent from the face of the complaint. CSI contends, however, that the second

Blackstone Realty precondition -- certitude that the defense bars the plaintiff's claim -- was not satisfied. See Blackstone Realty, 244 F.3d at 197. According to CSI, the facts in the complaint were sufficient to support an argument that Pavestone had waived or was estopped from asserting the liquidated damages clause as a defense. CSI argues that the pre-closing work that Pavestone performed on the property was so extensive that it represented a decision by Pavestone "to close by . . . conduct." Thus, the argument continues, Pavestone's conduct stripped it of "the right to walk away for $50,000."

The purchase and sale agreement specifically provided Pavestone with pre-closing access to the property to make improvements. While the agreement listed certain contemplated improvements, it provided that Pavestone could perform pre-closing work "without limitation." The pre-closing work performed by Pavestone was thus expressly contemplated by the parties' agreement. Pavestone's exercise of its contractual right to work on the property, a right expressly granted by the purchase and sale agreement, cannot constitute a waiver or estop it from asserting its right under the liquidated damages clause of the same agreement. Thus, the merit of Pavestone's affirmative defense was obvious at the motion to dismiss stage.[1]

_____

[1]CSI also claims that the district court mistakenly relied on the liquidated damages clause to dismiss the condition-of-the-property claims. As we understand the record, only the failure-to-close claims in excess of $50,000 were dismissed because of the

We turn next to the grant of summary judgment on the rezoning claims. We examine the summary judgment record in the light most favorable to the non-moving party and review the district court's ruling de novo. See Alberty-Velez v. Corporacion De P.R. Para La Difusion Publica, 361 F.3d 1, 5-6 (1st Cir. 2004).

CSI argues that the district court erroneously granted summary judgment on the rezoning claims by ruling that Massachusetts law precludes causes of action requiring proof of the legislative motive for the enactment of a municipal ordinance. We are not so sure that this was the district court's rationale. The court had before it Pavestone's motion for summary judgment, which challenged CSI's rezoning claim as both legally and factually insufficient. The basis for the district court's ruling is not obvious. We may affirm, however, for any reason apparent from the record. See id. at 6.

CSI focuses on the legal issue presented by Pavestone's motion: whether a claim which requires proof of the legislative motivation for an enactment may ever be viable under Massachusetts law. We will assume arguendo that such a claim is theoretically viable. Nevertheless, we affirm because CSI failed to present sufficient evidence from which a trier of fact could conclude that

---

liquidated damages clause. The remaining claims were disposed of on other grounds. See supra at 2-3.

Pavestone's conduct was the proximate cause of the town's rezoning decision.

CSI presented the following evidence in opposition to Pavestone's motion: that Pavestone performed heavy work at the property without warning abutting landowners; that Pavestone received complaints from neighbors about work being performed at night and on Sundays, and about heavy truck traffic on residential streets; that some Lakeville residents led a campaign opposing Pavestone's presence in the community; that some Lakeville residents filed a petition with the Board of Selectmen seeking to rezone the property; that the Planning Board subsequently held a meeting to address the possibility of rezoning the property, and that some local residents spoke negatively about Pavestone at that meeting; and that nine days later, at the town meeting, the residents of Lakeville voted 88 to 40 to rezone the property. There was no evidence, however, as to who actually voted at the town meeting or what motivated voters to approve the zoning change. We do not know, for instance, whether any of the attendees of the Planning Board meeting actually participated in the vote. Nor do we know whether any of the residents who complained about Pavestone's activities actually voted.

Under Massachusetts law, courts must be circumspect in attempting to ascertain the legislators' rationale for enacting a particular piece of legislation. As the Supreme Judicial Court

recently explained, such an inquiry is complicated by "[t]he diverse character of [the legislators'] motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth." Durand v. IDC Bellingham, LLC, 793 N.E. 2d 359, 365 (Mass. 2003) (quoting Boston v. Talbot, 91 N.E. 1014, 1016-17 (Mass. 1910)); see also United States v. O'Brien, 391 U.S. 367, 383-84 (1968) ("Inquiries into [legislative] motives . . . are a hazardous matter. . . . What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it."). The Massachusetts Appeals Court also has cautioned that the pre-enactment history of a town ordinance that does not clearly indicate the motives of the voters is insufficient to establish the town's rationale for enacting the ordinance. Southern New England Conference Ass'n of Seventh-Day Adventists v. Burlington, 490 N.E. 2d 451, 456 (Mass. App. Ct. 1986).

As stated above, CSI's evidence could permit a trier of fact to conclude that the rezoning change was made after Pavestone worked on the property and some members of the community complained about Pavestone's conduct. CSI presented no evidence, however, connecting Pavestone's conduct or the citizen complaints to the actual motivations of the voters who voted to rezone the property. Massachusetts courts recognize that voters often cast their ballots based on "irrelevant considerations," or at least for reasons other than those at the forefront of pre-balloting discussions. Id.

Given the Massachusetts courts' reluctance to engage in surmise over legislative motivation, CSI's anecdotal evidence identifying the concerns of some community members (who may not have even voted at the town meeting) is insufficient proof from which a trier of fact could conclude that the proximate cause of the voters' decision to rezone the property was Pavestone's allegedly wrongful conduct. Cf. Pheasant Ridge Assocs. Ltd. v. Burlington, 506 N.E. 2d 1152, 1156 (Mass. 1987) (affirming judicial determination that town's exercise of its eminent domain power was in bad faith because the evidence of bad faith was essentially undisputed, but noting that courts "should not easily attribute . . . motives to a town, and to its citizens voting at town meeting").

Finally, we consider CSI's challenge to the district court's decision reducing the prejudgment interest award to exclude the interest that CSI actually earned on the $50,000 deposit during the prejudgment period. CSI argues that the district court erred by reducing the prejudgment interest award because "Massachusetts courts have almost no discretion" to make such reductions.[2]

_____

[2]Before discussing the merits of this argument, we dispose of CSI's assertion that the district court lacked jurisdiction to consider this issue because Pavestone's motion to alter or amend the judgment was untimely. A party has ten days to file a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), and this period may not be extended. See generally García-Velazquez v. Frito Lay Snacks Caribbean, 358 F.3d 6, 8-9 (1st Cir. 2004). The ten-day period does not include weekends and holidays. See Fed. R. Civ. P. 6(a). Judgment entered on November 14, 2003, and Pavestone filed its motion on November 25, 2003. Not including weekends, Pavestone's motion was filed within ten days after judgment entered

Under the Massachusetts interest statute, prejudgment interest in a contract action is usually computed at the contract rate, if established, or otherwise at 12 percent. <u>See</u> Mass. Gen. L. ch. 231, § 6C. The Supreme Judicial Court has interpreted the statute to grant courts discretion to assure that interest awards do not result in "windfall[s] for plaintiffs." <u>Sterilite Corp.</u> v. <u>Continental Cas. Co.</u>, 494 N.E. 2d 1008, 1011 (Mass. 1986). The purpose of prejudgment interest is to compensate a wronged party for the loss of the use of money, and the award should reflect this purpose. <u>Id.</u>

Here, CSI earned interest on the $50,000 award during the prejudgment period because it held the deposit in an interest-bearing account. If CSI were able to retain this interest and receive the entire 12 percent interest award available under the statute, it would receive a windfall because it was able to benefit from the $50,000 deposit during the prejudgment period. The district court acted within the wide ambit of its discretion in tailoring the interest award so as to avoid bestowing a windfall upon CSI.

**<u>Affirmed</u>**.

---

and was therefore timely.