ELIOT K. COHEN & another *vs.* MAX GARELICK.

Suffolk.    May 8, 1962. — July 2, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Contract,* For sale of real estate. *Auction. Broker,* Commission. *Evidence,* Extrinsic affecting writing. *Frauds, Statute of.*

The documents in an auction sale of dairy premises, consisting of the memorandum of sale and purchase, an advertising brochure referred to therein, and a plan contained in the brochure, showed that the sale included a certain small parcel adjacent to a pond and claimed by the seller not to be included.   [655–657]

If there was an ambiguity in the memorandum of sale and purchase in an auction sale of real estate, the statute of frauds would not prevent resort to parol evidence to resolve the ambiguity.   [657]

Following an auction sale of dairy premises under an agreement of sale and purchase providing that the purchaser should "accept title . . . without claim . . . by reason of the condition of the buildings . . . or any damage thereto caused by or in the course of the removal of the machinery or equipment," which was sold separately, and that "from . . . the moment when the . . . [premises were] knocked down to the purchaser, he . . . [should] bear the risk of . . . damage . . . [thereto] due to . . . theft [or] casualty," a master's report in a suit in equity between the buyer and the seller did not support a conclusion that injury done to the buildings before performance of the agreement occurred otherwise than "by or in the course of the removal of the machinery or equipment" or through "theft [or] casualty," nor justify an award of damages for such injury to the buyer against the seller.   [657–660]

The facts, that an auctioneer firm hired by an owner of real estate to sell it at auction announced in effect that "broker participation" would be permitted and that a certain "participation commission" would be "allowed" to a broker representing the successful bidder at the time of his purchase if the broker had registered his "client" with "us," and would be "paid by us after settlement"; and that a broker for the successful bidder had duly registered him on a form stating that if "my client" were the successful bidder "I am to receive" such commission, "payable to me upon settlement," did not permit an inference that the owner of the property had authorized the auctioneer firm to bind him to pay such commission nor justify a ruling that the owner was liable to the successful bidder's broker therefor.   [660–661]

Cohen *v.* Garelick.

BILL IN EQUITY filed in the Superior Court on May 25, 1960.

The suit was heard by *DeSaulnier, J.,* upon a master's report.

*William A. Cross* for the defendant.

*Lawrence H. Adler* for the plaintiffs.

WHITTEMORE, J.    The plaintiffs seek a declaration of their rights in connection with the purchase at an auction sale by the plaintiff Eliot K. Cohen of real estate in Needham owned by the defendant, Max Garelick. The defendant has appealed from an interlocutory decree which, inter alia, confirmed a master's report, and from the final decree. The final decree ordered that Garelick convey the premises, inclusive of a disputed area fronting on a pond, and adjudged that Garelick had damaged Cohen to the extent of $2,000 by "conduct after the auction," and also that Garelick owed the plaintiff Arnold Ginsberg $1,040 as a broker's commission.

The issues are raised by certain of the defendant's objections to the master's report which were overruled in the interlocutory decree and by the denial in that decree of his motion to recommit.

1.    There is nothing in the several objections which raise the point that the master was not justified in finding that the disputed pond frontage was included in the auction sale of the real estate.

The memorandum of the sale and purchase reads in part: "I hereby agree to purchase as an entirety the real estate of the former Walker-Gordon Dairy, presently the property of Max Garelick, located in Needham, Massachusetts, with frontages on Charles River and Fisher Streets, consisting of a desirable twelve-acre tract of land with the buildings thereon, as set forth and described in the brochure advertising said property for sale at auction on Wednesday, April 27, 1960, at 11:00 A.M. E.D.T., for the sum of Fifty-two Thousand Dollars."

The brochure is entitled, "A DESIRABLE 12 ACRE TRACT OF WELL-SITUATED LAND." It includes a "preliminary plan"

which shows land fronting on Fisher Street and Charles
River Street and on the pond.   Below the plan is the state-
ment, ''The above plan in subdivision has been prepared by
a competent Engineer and shows a proposed subdivision of
the land into ten one-acre lots. . . .   Please Note: This
Property will be offered as an *Entirety only,* viz., approxi-
mately 12 acres of land with the buildings thereon.''   There
is on the plan an unbroken line surrounding a large parcel
consisting of ten lots and two roads.   Across one of the
roads to the north is the disputed parcel, a .304 acre piece
adjacent to the pond.   This smaller parcel is also enclosed
by an unbroken line except that the northwesterly and
northeasterly boundaries are extended into the pond a sub-
stantial distance without quite meeting.   A small building
is shown thereon.   There is no designation of the owner-
ship of either of these parcels.   Other abutting parcels be-
tween the road and the pond and elsewhere are designated
by the names of the owners.   The ten-lot enclosure contains
11.88 acres.[1]   The master justifiably found ''that [in the
original plan the] lines·around the . . . [10 lot parcel] are
heavier than the lines . . . [around the small pondside par-
cel] but this heaviness seems to have been lost in the trans-
posing of the map to the brochure.''   Garelick owned both
parcels.   As the total acreage is 12.184, the description of
''twelve acres'' is appropriate for all the land shown on the
plan owned by Garelick.

We rule that, on the documents, the sale included the dis-
puted piece.   Uncertainties of language are to be con-
strued against Garelick.   *Bowser* v. *Chalifour,* 334 Mass.
348, 352.

Although the construction of the agreement without ref-
erence to extraneous evidence was for the court, the master,
not knowing the ruling to be made, appropriately found and
relied on facts which confirmed to any reasonable buyer the
intention to sell the pondside parcel.   The announcement at
the sale offered ''approximately 12 acres of land together
with the buildings.''   The auctioneer stood on the dairy

---

[1] The acreages are not shown on the plan, but were later scaled.

steps and the prospective buyers stood on the disputed tract. The master stated that Ginsberg testified that the auctioneer had announced it as "beautiful waterfront property" and that another bidder "confirmed Mr. Ginsberg's statements." The implication is that the master believed this testimony; that being so, the fact should have been found and the recital of testimony avoided. The small building on the disputed parcel is, we assume, a pump house used with the other buildings, although that is not expressly found.[1]

The master was justified in ruling that, if in the circumstances Garelick "desired to withhold the [disputed] area . . . from the sale, he was under an obligation to bring this fact to the attention of the prospective purchasers."

There is nothing in the point that the statute of frauds bars this construction. The statute was not pleaded; in any event, if there was an ambiguity, the statute did not bar reference to the circumstances to resolve it. *Mead* v. *Parker*, 115 Mass. 413, 415. *Jennings* v. *Puffer*, 203 Mass. 534, 538. *Danforth* v. *Chandler*, 237 Mass. 518, 522. *Buckley* v. *Gray*, 285 Mass. 110, 116. *Michelson* v. *Sherman*, 310 Mass. 774, 776–777. *LaCouture* v. *Renaud*, 325 Mass. 33, 36–37.

2. An objection to the report in respect of the damages which the master allowed for the injury to the real estate reads: "The liability . . . for alleged damages . . . is for the court to determine from a legal construction of the sales agreement." We construe this as an objection to the finding of liability as a fact on the subsidiary facts stated in the report.

The agreement provided that "The purchaser . . . agrees to make settlement for and accept title to the property within the required time without claim or offset by reason

---

[1] The allegation of the bill that the pump house is on the disputed parcel is not expressly denied. The master found in respect of the cross hatching of buildings shown in the plan in the brochure, "It may . . . be noted that the lot lines run right through the cross hatched buildings, and that the pump house is also cross hatched. . . . [I find] that the cross hatching was to identify the buildings owned by Garelick."

of the condition of the buildings or improvements or any damage thereto caused by or in the course of the removal of the machinery and equipment.'' It also incorporated ''terms of sale'' which provided that ''From and after the moment when the property is knocked down to the purchaser, he shall bear the risk of any and all loss and/or damage to the property sold, which . . . may be due to fire, theft, casualty, act of the enemy, or any act of God, and no such loss or damage shall entitle the purchaser either to avoid the sale or to have any rebate or allowance, or any set-off against the agreed price.''

The plaintiffs claim that, nevertheless, there is a justified finding that the defendant or his agents were responsible for the injury.

The master found that ''there was considerable damage done in the removal of . . . equipment that was not listed in either Lot 71 or Lot 72 [that is, the two lots of personal property expressly listed to be sold]. . . . [P]hotographs show certain damage in both houses other than the locations where the items listed in Lot 71 or Lot 72 were affixed . . . . In addition, visual evidence disclosed that window weights, window casings, roof flashing, etc. were removed. I found other sections where stairs, walls and ceilings were deliberately removed. . . . I find that the real estate conveyance had not been completed, and the vendor is held responsible to an obligation of good husbandry; therefore the allowance of the agents of the owner or the representatives of the auctioneer, purchaser or others to come in and remove property create[d] a responsibility on the part of the vendor to prevent damage to the . . . auctioned premises. . . . I find from all the evidence that . . . [Garelick] after the auction and before the completion of the sales agreement, allowed certain damage to be done to the premises and certain property to be removed which caused damage I estimate to be $2,000.''

The sales agreement is dated April 27, 1960. The auction of the real estate took place at 11 A.M. The personal property was sold at 12 noon. The bill alleges that ''Thereupon . . . [after having made the high bid for Cohen]

Ginsberg . . . executed a purchase memorandum . . . paid a deposit to the auctioneer of . . . $7,800 . . . [and] departed from the auction area. Subsequently, the auctioneer sold . . . all the machinery and equipment . . . [and other property] which was . . . in fact realty." These allegations are not denied. In the light of the pleadings and in the context of the report we construe the master's finding that the damage occurred "before the completion of the sales agreement" to mean "before the carrying out of its terms," and not "before the execution and delivery of that agreement."

Taken out of context the finding that "from all the evidence . . . [Garelick] . . . allowed certain damage to be done to the premises and certain property to be removed . . ." tends to suggest that the master may have been relying on facts not expressly found in the report. The report, however, although not satisfactorily drawn in this respect,[1] shows an intent to include a statement of, or reference to, all the facts which the master found relevant to the issues. We, therefore, construe the reference to "all the evidence" in respect of the damage to the real estate to refer only to all the evidence set out or referred to in the report. *Deyo* v. *Athol Housing Authy.* 335 Mass. 459, 463. *Larson* v. *Brockton Agricultural Soc. ante,* 463, 465. *Roth* v. *Rubin Bros. Inc., ante,* p. 604. The report does not contain a sufficient basis for the conclusion that Garelick is liable for damage to the real estate. It is expressly based on the premise that Garelick was bound to take care to prevent the damage. But there was, by the terms of the agreement, no responsibility in the seller for "damage . . . caused by *or in the course of the removal* (emphasis supplied) of the machinery and equipment" or "damage . . .

---

[1] There are several references to "all the facts" or "all the evidence." Rule 86 of the Superior Court (1954) by amendment, effective July 1, 1961, requires that orders of reference to masters and auditors be in form to require that the subsidiary facts be found on which the general findings are based.

For the importance of such practice see *Larson* v. *Brockton Agricultural Soc., ante,* 463, 465. For the effect of findings "on all the evidence" where it does not appear that the conclusions are based only on the subsidiary facts found see *Johnson* v. *McMahon, ante,* 348, 351, and cases cited. The reference to the master in this case was on June 2, 1960; the report was filed October 13, 1961.

due to . . . theft [or] casualty." Assuming, but not deciding, that there was an obligation in Garelick to prevent damage from acts otherwise classifiable, such as wanton mischief, there is no basis for the conclusion that the damage done was by any such acts. All that the master says is that Garelick allowed "the agents of the owner or the representatives of the auctioneer, purchaser or others to come in and remove property." The removal could have been by theft or as a result of carelessness, misunderstanding or intended wrongdoing in the course of removing the purchased lots 71 and 72.

3. Another objection to the master's report was in these words: "The . . . finding that . . . Ginsberg was a real estate broker and that he registered as required under the terms of the auction for Eliot K. Cohen and if the sale is consummated is entitled to a reasonable commission cannot be [the basis of] a legal liability of the respondent." We construe this objection as though the bracketed words had been included and rule it adequate to raise the issue of the defendant's liability on the facts found.

On the last page of the brochure used at the sale are these words, "Further subject to our usual terms of sale for real estate which will be posted on the premises. Broker participation will be permitted. The sale is by order of owner Note: A detailed listing of the personal property which will be sold starting at noon . . . is available . . . . Samuel T. Freeman & Co. . . . Auctioneers . . . ." A newspaper advertisement by the auctioneers also contains the words "Broker Participation will be permitted."

The master listed as incorporated "Exhibit 15. Announcements of Auctioneer . . . made at auction April 27, 1960." Included in exhibit 15 is this paragraph: "Broker Participation A participation commission of 2% will be allowed to any licensed real estate broker who has registered his client with us and who represents that client at the time of his purchase. The commission will be paid by us after settlement. No registrations can be accepted after these announcements have been completed. Any broker having a client to register must do it now."

Exhibit 11, also incorporated in the report, is the printed form of "Registration For Broker Participation." It certified that Ginsberg is a licensed broker, and registered Cohen's name as the person whom Ginsberg would "represent at the sale of Walker Gordon Dairy on 4/27/60. If my client is the successful bidder, I am to receive a commission of 2 per cent, which is payable to me upon settlement."

The master found that Samuel T. Freeman & Co., Auctioneers, were employed by Garelick "for the purpose of running the auction of both the real and personal property on April 27, 1960, and that they did in fact run the advertisement, produce the brochure, inventory the property for the benefit of the vendor." The concluding section of the report includes this statement: "In order to complete the case, I make the following findings . . . . Prayer 11: I find that . . . Ginsberg was a real estate broker and that he properly registered . . . and if the sale is consummated he is entitled to a reasonable commission."

Even if we assume that, in the light of the averment in the bill of Garelick's liability, the finding in respect of prayer 11 was intended to include a finding that the commission was payable by Garelick, the report does not justify the ruling that Garelick is liable for a commission.

The plaintiffs argue that the "unreported testimony may . . . have caused the master to find that the obligation . . . was, by the announcements at the auction or by agreement of the interested parties, made the respondent's obligation as well as the auctioneer's." We hold, however, that the report shows an intention to include all the facts underlying the conclusion of liability for the broker's commission. See point 2, *supra*. The master's conclusion on this issue, unlike some others in the report, does not purport to be "on all the evidence."

On the subsidiary findings of the report, there is no basis for holding Garelick for the commission. He hired the auctioneer to sell the real estate. It may not be inferred that he authorized the auctioneer to bind him to pay a commission to other agents.

4. We see nothing in the defendant's contentions in respect of evidence excluded by the master and no error in the denial of the motion to recommit based on the exclusion.

5. The interlocutory decree is affirmed. The final decree is to be modified by striking therefrom paragraph B, which adjudges that Cohen may set off $2,000 against the purchase price, and paragraph C, which adjudges that Garelick owes Ginsberg $1,040 as commission. So modified the final decree is affirmed.

*So ordered.*