# United States Court of Appeals
## For the First Circuit

No. 00-1570

BLACKSTONE REALTY LLC,

Plaintiff, Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
IN ITS CORPORATE CAPACITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Stahl, Lynch, and Lipez,
Circuit Judges.

Mark S. Foss, with whom Peters, Massad & Rodolakis was on brief, for appellant.
Thomas C. Bahlo, Counsel, with whom Ann S. Duross, Assistant General Counsel, and Robert D. McGillicuddy, Supervisory Counsel, were on brief, for appellee.

April 3, 2001

**STAHL, Circuit Judge**. This appeal asks us to consider whether an action to recover on an agreement for the purchase of real property was properly dismissed on the pleadings because the writing evidencing the agreement did not satisfy the Massachusetts statute of frauds, Mass. Gen. Laws ch. 259, § 1. Defendant-appellee Federal Deposit Insurance Corporation (the "FDIC") argued, and the district court held, that the writing failed to identify the property being sold with "reasonable certainty," as is required by the statute of frauds. Plaintiff-appellant Blackstone Realty LLC ("Blackstone") appeals. For the reasons discussed below, we vacate and remand.

I.

Unless otherwise indicated, we draw the factual background from Blackstone's complaint and attached exhibits.[1] In 1995, the FDIC acquired three abutting parcels of property located in Uxbridge, Massachusetts. The street addresses of the parcels were 80 Quaker Highway, 287 Millville Road and 307 Millville Road (collectively, the "Properties"). In September

---

[1] Exhibit A is the written offer with handwritten notations alleged by Blackstone to constitute a contract to sell the subject properties. Exhibit B is a letter and attachment sent on October 5, 1995, on FDIC's behalf, discussing various unsold properties, including those that are the subject of this case. Pursuant to Fed. R. Civ. P. 10(c), we treat these exhibits as "a part [of the pleading] for all purposes," including Fed. R. Civ. P. 12(b)(6). McCallion v. Lane, 937 F.2d 694, 696 (1st Cir. 1991).

1995, the FDIC conducted its "Fall Northeast Real Estate Auction" (the "Auction"). In the brochure prepared for the Auction, the Properties were offered for sale "as one parcel," identified as "Property #124." The brochure identified the Properties by their street addresses but also noted that "Millville Road is Route 122 South of Downtown Uxbridge" and that "Quaker Highway is Route 146A south of Route 122."[2]

Fisher Auction Co. ("Fisher") performed the Auction for the FDIC. Among those attending the auction, and bidding on Property #124, was Long Beach Investment Co. ("Long Beach"). Long Beach was interested in the Properties, in significant part, because it knew that the U.S. Postal Service was looking for a new location in Uxbridge. Long Beach thought that some

_____

[2] Although Blackstone's complaint relied upon certain provisions of the Auction brochure, the brochure was not made an exhibit to the complaint. In the absence of any dispute regarding the authenticity of the brochure, which entered the record as an attachment to the FDIC's motion to dismiss and was relied upon by both parties in their appellate briefs, we consider the document as a whole to be properly before us. Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (holding that, in ruling on a motion to dismiss, a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint . . ."); Beddal v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998) (concluding that, where trust agreement was "discussed at length" in the complaint, although not attached, and no challenge was made as to its authenticity, the agreement "effectively merge[d] into the pleadings and the trial court [could] review it in deciding a motion to dismiss").

portion of the site would be suitable for the proposed post office, and had already queried the Postal Service about this possibility. Although Long Beach was not the successful bidder, Long Beach remained after the bidding to confirm whether the successful bidder would be able to close. As it turned out, the deal with the high bidder fell through. Long Beach was then encouraged, by representatives of both Fisher and the FDIC, to continue pursuing its interest in the Properties through Fisher.

On September 28, 1995, Long Beach submitted to Fisher, via facsimile, a letter offering to pay $175,000 for the Properties. The caption of the letter read "Property #124" on the first line, and, on two following lines, "Property located at Quaker Highway and Route 122, Uxbridge, Massachusetts." The offer contained no conditions, other than the price, and Long Beach indicated that it was able to close within seven days of acceptance.

On October 5, 1995, Fisher issued a form letter soliciting written bids on various pieces of property not sold at the Auction. Long Beach received a copy of this letter. An attachment to the letter listed the unsold properties by Auction brochure number, including Property #124. However, in a departure from the Auction brochure's terminology, the column of

the listing labeled "property location" gave the address of Property #124 as "287 & 307 Millville Road."

On October 24, 1995, Fisher returned a copy of Long Beach's offer letter with several handwritten notations. These notations indicated that the FDIC had "accepted" the offer, but wanted the price to be $195,000. In addition, the notations set out the address of the Properties, referencing the same roads -- Quaker Highway and Route 122 -- used by Long Beach in its caption. Finally, the notations directed Long Beach to confirm the proposed terms by initialing the marked-up letter and returning it, by facsimile, to Fisher's representative.

On October 25, 1995, Long Beach accepted the counteroffer by the method provided for in the notations. Soon thereafter, however, the FDIC repudiated its agreement with Long Beach. The FDIC gave two different explanations for doing so, claiming, first, that the FDIC's acceptance had been a "mistake" and, second, that it thought Long Beach's offer was only for a portion of Property #124. The FDIC offered to negotiate a sale of all three parcels to Long Beach on "very favorable terms," but these negotiations were unsuccessful. The FDIC and Fisher then stopped returning Long Beach's phone calls. A few months thereafter, the FDIC sold the entirety of Property #124 to a third party for $400,000. As Long Beach had anticipated, the

buyer was able to negotiate a long-term lease of a portion of the site with the Postal Service.

Certain assets belonging to Long Beach were later assigned to Blackstone. Among them were all of Long Beach's rights, including claims and causes of action, deriving from the alleged agreement with the FDIC. Blackstone brought this action in May 1999, seeking money damages for losses suffered by Long Beach as a result of the FDIC's repudiation of the agreement. The FDIC moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing that any agreement allegedly formed by the offer and the written notations was insufficient under the Massachusetts statute of frauds because it contained no "reasonably certain" description of the land to be sold. The district court granted the FDIC's motion and this appeal followed.

## II.

A district court's allowance of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed <u>de</u> <u>novo</u>.[3]

---

[3] In its brief, Blackstone questions whether the FDIC's inclusion of the auction brochure as an exhibit to its motion to dismiss effectively converted the motion into one for summary judgment. Nothing in our precedent requires such a result under the circumstances of this case, <u>see, e.g.</u>, <u>Clorox Co. P.R.</u>, 228 F.3d at 32 (noting that a court acting on a motion to dismiss may review documents relied upon in a complaint, even if not attached, "without converting the motion into one for summary judgment"), and we therefore follow the district court in

-7-

<u>Bessette</u> v. <u>Avco Fin. Servs., Inc.</u>, 230 F.3d 439, 443 (1st Cir. 2000).  Like the district court, we must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of Blackstone.  <u>See</u> <u>id.</u>  We will affirm the dismissal "only if, under the facts alleged, the plaintiff cannot recover on any viable theory."  <u>Id.</u> (quoting <u>Garita Hotel Ltd. P'ship</u> v. <u>Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992) (internal quotation marks omitted)).

It is well established that affirmative defenses, such as the failure of a contract sued upon to satisfy the statute of frauds, may be raised in a motion to dismiss an action for failure to state a claim.  <u>See</u> <u>Keene Lumber Co.</u> v. <u>Leventhal</u>, 165 F.2d 815, 820 (1st Cir. 1948) (finding statute of frauds defense to be properly raised in a motion to dismiss); <u>see</u> <u>also</u> <u>LaChapelle</u> v. <u>Berkshire Life Ins. Co.</u>, 142 F.3d 507, 508 (1st Cir. 1998) (acknowledging the appropriateness of a motion to dismiss raising a statute of limitations defense); 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357, at 354-56 (2d ed. 1990) (citing numerous cases considering affirmative defenses, including statute of frauds, on motions to dismiss).  However, it is equally well settled

construing the motion as one for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear "on the face of the plaintiff's pleadings." Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989) (discussing the issue with respect to a statute of limitations defense); accord Wright & Miller, supra, at 348-49 (collecting cases adopting this view); see also Keene, 165 F.2d at 820 (finding dismissal on statute of frauds grounds appropriate where the fact that the agreement was oral was apparent "from the face of the complaint"). Furthermore, review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6), must "leave no doubt" that the plaintiff's action is barred by the asserted defense. LaChapelle, 142 F.3d at 508 (affirming dismissal based on statute of limitations defense where dates included in complaint showed limitations period was exceeded and complaint "failed to sketch a factual predicate that would warrant the application of equitable estoppel" to toll the running of the statute); compare Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993) (finding dismissal based on statute of limitations defense inappropriate where the complaint "adequately allege[d] facts showing the potential applicability of the equitable tolling doctrine" (emphasis in original)).

Having reviewed the documents properly before us -- Blackstone's complaint, the alleged agreement to sell the property, the October 5 form letter (with attachment), and the Auction brochure -- as well as the applicable substantive law, we do not agree with the district court that dismissal of Blackstone's action was warranted. The district court's ruling was premised on its view that the description of the Properties provided in Long Beach's offer letter was ambiguous, and that the resulting agreement therefore failed adequately to identify the land Long Beach sought to purchase. See Michaelson v. Sherman, 39 N.E.2d 633, 634-35 (Mass. 1942) (discussing requirement under the Massachusetts statute of frauds that a contract for the sale of real property be evidenced by a writing "recit[ing] the essential elements of the contract" including the identity of the property "with reasonable certainty"); see also id. at 635 (stating that identifying language in an agreement is adequate if "the estate intended [is] the only one which would satisfy the description.") (quoting Doherty v. Hill, 11 N.E. 581, 583 (Mass. 1887) (Holmes, J.)). The court suggested two ways in which the description was ambiguous. First, although the offer letter referred to Property #124, the court thought it unclear whether this reference was to Property #124 as described in the Auction brochure, which listed three

addresses (one on Quaker Highway and two on Millville Road) or to Property #124 as described in the attachment to the October 5 form letter, which listed only two (the Millville Road addresses).[4]  Second, the court postulated that, even if the reference to "Property #124" was intended to mean all three parcels, the letter was ambiguous because the further reference to the "Property located at Quaker Highway and Route 122" could be read to suggest that Long Beach was bidding only on the single parcel known as 80 Quaker Highway rather than the whole of Property #124.

While the documents comprising the alleged agreement are not a model of clarity, we do not believe that they inadequately identify the Properties as a matter of law. Massachusetts precedent entitles Blackstone to introduce evidence regarding the circumstances of its dealings with the FDIC in order to dispel the kinds of ambiguities identified by

---

[4]  It is undisputed that, under Massachusetts law, multiple documents pertinent to a transaction may be read together in determining whether the statute of frauds has been satisfied. See Tzitzon Realty Co. v. Mustonen, 227 N.E.2d 493, 496 (Mass. 1967) (holding that descriptive language in the signed contract was appropriately considered a "shorthand description of the land more fully described in [a separately prepared] abstract"); see also id. (noting the general principle that multiple documents may be read together for statute of frauds purposes if it is shown that "[the] papers were so connected in the minds of the parties that they adopted all of them as indicating their purpose") (citing Clark v. Olejnik, 133 N.E. 197, 198 (Mass. 1921)).

-11-

the district court.  Cohen v. Garelick, 184 N.E.2d 56, 58 (Mass. 1962) (noting, in the context of a dispute over which parcels were covered by an agreement, that "if there was an ambiguity, the statute [of frauds] did not bar reference to the circumstances to resolve it"); Tzitzon, 227 N.E.2d at 596 (stating that, when the statute of frauds is pled, "attendant circumstances may be shown outside the writing and by parol for the purpose of interpreting and applying the [agreement]") (quoting Harrigan v. Dodge, 86 N.E. 780 (Mass. 1909)).  So too, Massachusetts cases suggest that the adequacy of descriptive language in an agreement is to be determined "as between the parties" actually involved in the transaction.  See Tzitzon, 277 N.E.2d at 495-96.  Reading the language of the writing in light of the account of the transaction provided in Blackstone's complaint, as we must, we think that Blackstone has plausible arguments that the meaning of the agreement was sufficiently clear as between the FDIC and Long Beach.

For example, while the district court is correct that the attachment to the October 5 form letter listed two street addresses in its entry for Property #124 -- rendering the attachment inconsistent with the Auction brochure -- the circumstances recited in the complaint are far from conclusive as to whether either party had reason to believe that Long

Beach's offer referred to the attachment. Given that the October 5 letter was apparently sent to Long Beach <u>after</u> Long Beach's offer had been submitted, it appears that, in fact, Long Beach could <u>not</u> have intended the offer to incorporate the attachment's description. And, while the pleadings may not preclude the possibility of the FDIC construing the offer as incorporating the two-parcel description, they do not support it either. The caption of Long Beach's offer letter specifically refers to Property #124 as the property "at" Quaker Highway <u>and</u> Route 122 (which, as both parties knew, was also Millville Road), and someone at either Fisher or the FDIC recopied the same address. If Fisher or the FDIC thought that Long Beach was incorporating a description that only contained properties on Millville Road (Route 122), the references to Quaker Highway would have made little sense.[5]

We have similar qualms with respect to the second ambiguity identified by the district court. While the court suggests that Long Beach's bid (and the FDIC's notation) might have been viewed as referring only to the single parcel located

_____

[5]    Blackstone argues that the district court mistakenly accepted as truthful the FDIC's contention that it was in fact confused about the property reference. We do not think it clear that the district court did so, although we agree with Blackstone that the present record, read in Blackstone's favor, would not support such an inference.

on Quaker Highway, this interpretation appears unlikely in light of the caption's reference to <u>both</u> Quaker Highway and Route 122 (Millville Road).  Why would Route 122 even be mentioned if Long Beach only meant to bid for the Quaker Highway parcel?  We can imagine circumstances under which the ambiguity referred to by the district court would arise -- for example, if the Quaker Highway parcel also had frontage on Route 122/Millville Road, and thus could, by itself, meet the captioned description.  However, nothing in any of the documents before us establishes that this was the case.

None of the above, of course, is intended to prejudge whether the FDIC's statute of frauds defense might be successful either in a motion for summary judgment filed after the close of discovery, or at trial.  Discovery may produce evidence supporting the district court's view that the language of the writing was insufficient, even in context, to establish the identity of the land Long Beach sought to purchase.  However, we think it apparent that, "under some set of facts within the bounds of the allegations and non-conclusory facts in the complaint, [Blackstone] may be able to prove a claim," which is all that is required to survive a motion to dismiss.  <u>Rosa</u> v. <u>Park West Bank & Trust Co.</u>, 214 F.3d 213, 216 (1st Cir. 2000).

-14-

We therefore vacate and remand for further proceedings consistent with this opinion.

It is so ordered.