In re Tyco Litigation                    MDL-02-1335    12/02/04

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**In re Tyco International. Ltd.**
**Multidistrict Litigation (MDL 1335)**

MDL DOCKET NO. 02-1335-PB
**ERISA Action**
Case No. 02-1357-PB
**Opinion No. 2004 DNH 177**

### MEMORANDOM AND ORDER

The named plaintiffs in this class action are participants

in retirement plans ("Plans") sponsored by Tyco International

(US) Inc. ("Tyco US").  Plaintiffs invoke the Employee Retirement

Income Security Act ("ERISA") in asserting breach of fiduciary

duty claims against Tyco US, its parent corporation, Tyco

International Ltd. ("Tyco International"), the committee that

administered the Plans, and several former officers and directors

of Tyco US and its parent corporation.  The claims concern the

Tyco Stock Fund, which holds Tyco International stock and is one

of the Plans' investment options.  Plaintiffs charge in Count I

that defendants made material misstatements and omissions to

participants concerning Tyco International's financial condition

and the risk characteristics of the fund.  They allege in Count

II that defendants were negligent in allowing participants to invest in the fund.

Defendants attack the complaint's sufficiency on several grounds. They first argue that only the committee that administered the Plans was a fiduciary. Second, they assert that plaintiffs' claims are barred by Section 404(c) of ERISA, which precludes certain breach of fiduciary claims for losses that were caused by a participant's own investment decisions. Next, they contend that Count I fails because it does not allege any actionable misstatements or omissions and Count II is deficient because it does not sufficiently allege that defendants acted imprudently. Finally, they contend that the complaint must be dismissed because ERISA does not authorize Plan participants to recover monetary relief for fiduciary breaches.

## I.  BACKGROUND

Tyco US sponsors the seven retirement plans that are at issue in this case. All seven plans are "individual account plans." 29 U.S.C. § 1002(34). Accordingly, each participant is assigned an individual account and the participant's benefits are

"based solely upon the amount contributed to the account, and any income, expenses, gains or losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." Id. Participants are permitted to contribute to their accounts and Tyco US is required to make matching contributions in amounts equal to a specified percentage of a participant's regular compensation. Participants may choose from among several different investment options and may transfer funds from one investment to another at any time.

The Tyco Stock Fund is one of several investment options that are available under the Plans. The fund holds shares in Tyco International stock. Because it is a "unitized fund," a trustee designated by Tyco US holds title to the stock and participants are assigned units in the fund. The trustee acquires stock by purchasing it on the open market. Participants are not permitted to invest more than 25% of their Plan assets in the fund.

The Tyco US Retirement Committee ("Committee") is both the administrator and a "named fiduciary" for all seven Plans. The Board of Directors of Tyco US is responsible for appointing and

removing members of the Committee. The Plans describe the respective powers and duties of the Board and the Committee by stating that

> [t]he Board of Directors of the Plan Sponsor and the Committee shall have only those specific powers, duties, responsibilities, and obligations as are specifically given them under this Plan and the Trust Agreement. In general, the Board of Directors of the Plan Sponsor shall have the sole responsibility for the appointment of the Retirement Committee. The Committee shall have the sole responsibility for the general administration of the Plan and for carrying out its provisions.

See, e.g., Plan II ¶ 8.1. Each Plan also states that

> [t]he Board of Directors of the Plan Sponsor and the Committee and any other person who, by reason of his involvement in and under this Plan, shall be deemed to be a fiduciary within the meaning of Title I, Section 3(21) of ERISA, shall discharge their Plan-related duties and responsibilities solely in the interests of the participants and their beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

See, e.g., Plan II Art. XIII.

Plaintiffs claim that the price of Tyco International's stock was grossly inflated during the class period as a result of undisclosed looting and pervasive accounting fraud by its senior

-4-

management.  As a result, class members who held units in the Tyco Stock Fund during the class period allegedly suffered substantial losses when the company's true financial condition was exposed.

## II.  <u>STANDARD OF REVIEW</u>

"[A] complaint should be dismissed [pursuant to Fed. R. Civ. P. 12(b)(a)]. . . 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Gorski v. N.H. Dep't of Corr.</u>, 290 F.3d 466, 473 (1st Cir. 2002) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).  Accordingly, I must accept the complaint's factual allegations as true and draw all reasonable inferences from those alleged facts in favor of the plaintiffs.  <u>Id.</u> Although the complaint is governed by the liberal pleading standards of Fed. R. Civ. P. 8(a), it nevertheless "must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." <u>United States ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 240 (1st Cir. 2004).

# III. **ANALYSIS**[1]

## A. **Fiduciary Status**

Defendants first argue that only the Committee and its members can be held liable for a breach of fiduciary duty because the Committee is the only entity that was named as a fiduciary under the Plans.

Retirement plans regulated under ERISA must have one or more named fiduciaries. 29 U.S.C. § 1102(a). In addition, Section 3(21)(a) of ERISA provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or respon-

---

[1] Defendants contend that the named plaintiffs lack standing to assert claims on behalf of participants in Plans I, VI, and VII because none of the named plaintiffs was a participant in these Plans. The short answer to this argument is that it should be raised in an objection to a motion for class certification rather than in a motion to dismiss. Plaintiffs plainly have standing to seek relief for their own injuries. Whether they also should be permitted to represent a class that includes participants in related plans implicates prudential concerns that must be analyzed under Fed. R. Civ. P. 23. See Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 422 (6th Cir. 1998).

sibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21). Several aspects of Section 3(21)(a) require emphasis. First, the section provides a functional rather than formal test of fiduciary status. Accordingly, a person may owe fiduciary duties to a participant even though the plan documents do not designate the person as a fiduciary. Second, a person will be deemed to be a fiduciary only if he either: (1) has or exercises discretion in administering the plan or managing its assets; or (2) provides investment advice concerning plan assets in exchange for compensation. Finally, as the First Circuit has recognized, "[f]iduciary status is not an all or nothing proposition; the statutory language indicates that a person is a plan fiduciary only 'to the extent' that he possesses or exercises the requisite discretion and control." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998).

Plaintiffs argue that defendants other than the Committee are liable because they qualify as fiduciaries under Section 3(21)(a). Defendants respond by contending that they cannot be considered fiduciaries under this section either because they did

not exercise discretion or they were not administering the Plans when they allegedly committed the acts on which plaintiffs' claims are based. I address this argument with respect to each group of defendants in turn.

## 1. **Bent and Heffernan**

Robert Bent and Kelly Heffernan were employees of Tyco US. Plaintiffs have sued them in their respective capacities as the Clerk and an authorized signatory of the Committee.

I agree with defendants that the complaint does not sufficiently allege that either Bent or Heffernan owed fiduciary duties to the plaintiffs. While the Committee plainly is a named fiduciary, the complaint does not allege that either Bent or Heffernan were members of the Committee. Nor is it reasonable to assume that they were members simply because they allegedly performed services on behalf of the Committee. Finally, I cannot accept plaintiffs' argument that Bent and Heffernan acted in a fiduciary capacity because they signed SEC filings on behalf of the Committee. The complaint does not claim that either defendant exercised discretionary control over the administration of the Plans when they signed the documents in question.

Ministerial actions of this sort do not give rise to fiduciary responsibilities. See Beddall, 137 F.3d at 20. Accordingly, I dismiss all claims against Bent and Heffernan.

## 2. Tyco US

Plaintiffs offer three arguments to support their claims against Tyco US. First, they contend that it was a fiduciary because the Plans assign it discretionary authority with respect to matters of Plan administration. Next, they argue that it was a fiduciary because it actually exercised such authority. Finally, they contend that it is vicariously liable for the fiduciary breaches of its employees who served on the Committee based on the doctrine of *respondeat superior*.

### a. Plan Documents

The Plans identify Tyco US as the Plan Sponsor and state that "the Plan Sponsor hereunder shall have and exercise all rights, powers, and duties thereof with respect to the Plan and the assets of the Plan." See, e.g., Plan II ¶ 10.2. Plaintiffs claim that this passage makes Tyco US a fiduciary because it gives the company discretionary authority with respect to matters of Plan administration.

Plaintiffs' argument is based on a misreading of the above-quoted passage. Paragraph 10.2 merely recognizes that Tyco US has the powers and duties of a Plan Sponsor. The only power that the Plans specifically assign to Tyco US in that capacity is the power to amend the Plans. See Plan II ¶ 10.1. A Plan sponsor generally does not act in a fiduciary capacity when it exercises such power. See Lockheed Corp. v. Spink, 517 U.S. 882, 889-90 (1996). Accordingly, the complaint does not sufficiently allege that the Plan documents assign Tyco US discretionary authority with respect to matters of Plan administration.

### b. Exercise of Discretionary Authority

Plaintiffs alternatively claim that Tyco US was a fiduciary because it actually exercised discretionary authority in administering the Plans. Plaintiffs base this argument on actions that Tyco US allegedly took while operating the Tyco Benefits Center. Several Plan documents advise participants to contact the Center if they have questions concerning the Plans. The documents also designate the Center as the point of contact for participants who wish to reallocate investments, modify contributions, or obtain distributions. Plaintiffs charge that Tyco US necessarily engaged in discretionary acts of Plan

administration when, acting through the Center, it assisted participants with such matters.  I disagree.

A Plan Sponsor does not become a fiduciary merely because it performs ministerial duties with respect to matters of Plan administration.  See Beddall, 137 F.3d at 20.  Responding to routine requests for information and processing requests to reallocate investments, change contributions, or make distributions, ordinarily does not involve the kind of discretion that is required to give rise to fiduciary responsibilities. Plaintiffs thus do not identify any conduct by Tyco US that supports the view that it engaged in discretionary acts of Plan administration.

c.  *Respondeat Superior*

Plaintiffs alternatively invoke the doctrine of *respondeat superior* in claiming that Tyco US is vicariously liable for the fiduciary breaches of its employees who served on the Committee.

The First Circuit has not identified the circumstances under which an employer will be held vicariously liable for the fiduciary breaches of its employees, and the few courts that have addressed the question have taken divergent paths in doing so. The Fifth Circuit has suggested that an employer will be

-11-

vicariously liable for its employee's actions only if it "actively and knowingly" participated in an employee's fiduciary breaches. See Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S., 841 F.2d 658, 665 (5th Cir. 1988). The Sixth Circuit has concluded that an employer can be held liable for an employee's breaches of fiduciary duty even if it was unaware of its employee's misconduct. See Hamilton v. Carell, 243 F.3d 992, 1002 (6th Cir. 2001)(dictum); see also Nat'l Football Scouting, Inc. v. Cont'l Assur. Co., 931 F.2d 646, 649 (10th Cir. 1991) (assuming that *respondeat superior* doctrine applies to ERISA claims). In contrast, the Ninth Circuit has declined to hold an employer who sponsors an ERISA plan liable for breaches of fiduciary duty committed by employees who served on the Committee that administered the Plan. See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir. 1985). District courts that have addressed the issue are similarly split. Compare In re Reliant Energy ERISA Litig., 336 F. Supp. 2d. 646, 657-58 (S.D. Tex. 2004) (applying *respondeat superior*), Howell v. Motorola, Inc., 337 F. Supp. 2d 1079, 1093-94 (N.D. Ill. 2004) and Kling v. Fidelity Mgmt. Trust Co., 323 F. Supp. 2d. 132, 146-47 (D. Mass.

-12-

2004) with Crowley ex rel. Corning Inc. Inv. Plan v. Corning, Inc., 234 F. Supp. 2d. 222, 228-29 (W.D.N.Y. 2002) (rejecting *respondeat superior*) and Tool v. Nat'l Employee Benefit Servs, Inc., 957 F. Supp. 1114, 1117 (N.D. Cal. 1996).

I am not able to resolve defendants' challenge to plaintiffs' *respondeat superior* claim on the present record. While I do not doubt that an employer can be held vicariously liable for the fiduciary breaches of its employees under certain circumstances, I cannot determine how the doctrine applies in this case without knowing more about the underlying facts. Accordingly, I decline to dismiss plaintiffs' claims against Tyco US to the extent that they are based on a *respondeat superior* theory.

### 3. Tyco US Board Members

Plaintiffs argue that the Board of Directors of Tyco US owed fiduciary duties to the Plans and their participants because it acted in a fiduciary capacity when it appointed and retained members of the Committee. I agree.

When an entity is given the power to appoint and retain a plan administrator, it is subject to a fiduciary duty to use

reasonable care in exercising that power. See Am. Fed'n of Unions Local 102, 841 F.2d at 665; Leigh v. Engle, 727 F.2d 113, 135 (7th Cir. 1984); In re Reliant Energy ERISA Litig., 336 F. Supp. 2d. at 656; In re Enron Corp. Sec., Derivative, & "ERISA" Litig., 284 F. Supp. 2d 511, 552 (S.D. Tex. 2003). Whether the directors of Tyco US breached this duty is a question of fact that must be resolved at a later date.

**4. Tyco International**

Plaintiffs offer three arguments to support their contention that Tyco International was a fiduciary. First, they claim that Tyco International assumed fiduciary duties by disseminating documents that it was required to either file with the SEC or make available to Plan participants in order to comply with federal securities laws. Second, they argue that it was a fiduciary because it is the alter ego of Tyco US. Third, they allege that it is vicariously liable for Kozlowski's fiduciary breaches under the doctrine of *respondeat superior*.

**a. SEC Documents**

Plaintiffs claim that Tyco acted in a fiduciary capacity when it disseminated SEC Form S-8s and Section 10(a) prospectuses that incorporated by reference other allegedly misleading SEC

-14-

documents.[2]  Defendants respond by arguing that Tyco was acting in a corporate capacity rather than a fiduciary capacity when it disseminated the documents.  To understand this issue, one must know more about the relevant documents.

The Securities Act of 1933 ("Securities Act") requires issuers of certain securities to file registration statements. See 15 U.S.C. § 77e.  Form S-8 is the statement that covers "securities to be offered to employees pursuant to employee benefit plans."  17 C.F.R. § 239.16(b)(a).  The form is used to register: (1) securities that an employer issues to its own employees or employees of a parent or subsidiary; and (2) interests in plans that offer such securities.  See id.  A registrant is required to incorporate certain prior SEC filings

_____

[2]  Plaintiffs also allege that Tyco International acted in a fiduciary capacity when it filed SEC Form 11-Ks on behalf of the Committee.  A Form 11-K is an annual report "with respect to employee stock purchase, savings and similar plans, investments in which constitute securities regulated under the Securities Act of 1933."  Form 11-K at 1.  The form is signed by the plan's administrator and must be filed with the SEC.  See id. at 2. Plaintiffs do not allege that Tyco International prepared or signed the Form 11-Ks.  Instead, they merely assert that Tyco International filed the forms with the SEC on behalf of the Committee.  Such conduct does not involve the exercise of discretion.  Thus, Tyco International was not acting in a fiduciary capacity when it filed the Form 11-Ks on behalf of the Committee.

by reference in a Form S-8.  See Form S-8 at 8.  A Form S-8 must be signed by the registrant, designated officers of the registrant, and at least a majority of its directors.  See id. at 10 n.1.  The Plan is also required to sign the form if the security consists of interests in the Plan.  See id.  Plaintiffs charge that Tyco International prepared, signed, and filed the Form S-8s at issue in this case.[3]

Section 10(a) of the Securities Act requires issuers of certain securities to prepare prospectuses.  See 15 U.S.C. § 77J(a).  Special rules apply if a Form S-8 is used to register the securities.  For example, a prospectus need not be filed with the SEC and the registrant may rely on Plan documents such as an SPD to serve as the prospectus.  See SEC Release No. 280924 *5-6 (June 6, 1990).  A Section 10(a) prospectus must incorporate by reference the same SEC filings that must be incorporated by reference in a Form S-8.  See 17 C.F.R. § 230.428.  The

---

[3]  Plaintiffs also argue that Tyco International's former directors and several of its officers are liable because they signed the Form S-8s and were involved in the preparation of other SEC filings.  This argument fails for the same reason that it is unavailing against Tyco International:  the former directors and officers were not administering the Plans when they signed the forms.

prospectuses at issue consisted of SPDs and Plan Information Statements.

Whether Tyco International acted in a fiduciary capacity when it disseminated Form S-8s and Section 10(a) prospectuses depends upon whether it engaged in plan "management" or "administration" when it disseminated the documents. The Supreme Court addressed a somewhat similar question in Varity Corp. v. Howe, 516 U.S. 489, 502 (1996). There, the Court considered, among other things, whether deceptive statements that an employer and plan administrator made to its employees concerning the security of their benefits could support a breach of fiduciary duty claim. In upholding the district court's determination that the defendant could be held liable for a breach of fiduciary duty, the Court reasoned that the defendant was administering the plan when it made the statements because: (1) the provision of detailed information concerning the security of plan benefits is a plan-related activity; (2) the statements at issue were made by agents of the employer who were authorized to communicate to participants in a fiduciary capacity; and (3) the participants reasonably could have believed under the circumstances that the employer was acting in a fiduciary capacity when its agents made

the statements.  Id. at 502-03.

Plaintiffs argue that Varity requires a similar conclusion here because the Form S-8s and Section 10(a) prospectuses, like the employer's statements in Varity, provided participants with detailed information concerning the security of their benefits. This argument misreads Varity.  As I have explained, Varity holds only that such statements may qualify as acts of plan administration if they are made by a person who is authorized to act in a fiduciary capacity.  This was not the case here because Tyco International was acting solely as an issuer of stock rather than a fiduciary when it disseminated the documents.

There are also good reasons why the court's reasoning in Varity should not be extended to the present case.  First, it would be difficult to reconcile such a result within the language of Section 3(21)(a), which rests a finding of fiduciary status in this type of case on a determination that the defendant actively participated in the administration of the Plan.  Second, there is little evidence in the legislative history of either the Securities Act, which is the source of the disclosure requirements, or ERISA to support the view that an issuer of stock necessarily assumes fiduciary responsibilities in complying

with its obligations under the securities laws if it chooses to allow its employees to invest in its stock as a part of an individual account plan. Although plaintiffs plainly had a right to expect that Tyco International would refrain from making material misstatements in its SEC filings, that expectation must be enforced under the securities laws rather than ERISA. Accordingly, I reject plaintiffs' argument that Tyco International was engaged in discretionary acts of Plan administration when it disseminated the Form S-8s and Section 10(a) prospectuses.[4]

### b. Alter Ego Liability

Plaintiffs next argue that Tyco International is vicariously liable for the fiduciary breaches of Tyco US because it is the

---

[4] Plaintiffs specifically cite statements that Tyco allegedly made in a prospectus update that it prepared in response to the merger of Mallinkrodt, Inc. and a subsidiary of Tyco International. The prospectus update explained to participants in the prior Mallinkrodt plan that the plan's option to invest in the Mallinkrodt Fund would be replaced by the option to invest in the Tyco Stock Fund following the merger. Plaintiffs attach special significance to this document because it states that Tyco International will be responsible for disseminating the prospectus update to participants. This argument is unavailing because, as I have explained, Tyco International did not engage in discretionary acts of Plan administration when it disseminated the prospectuses.

alter ego of its subsidiary.

Although the First Circuit has yet to apply the alter ego doctrine to a breach of fiduciary duty claim, it has identified the conditions under which a parent corporation may be held vicariously liable for its subsidiary's obligation pursuant to an ERISA-regulated plan to pay its retirees' health insurance premiums.  In United Elect., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080 (1st Cir. 1992), the court explained that "litigants who insist that the corporate veil be brushed aside must prove three things:  lack of corporate independence, fraudulent intent, and manifest injustice."[5]  Id. at 1093.

---

[5]  The court held in a later opinion that proof of a wrongful anti-union motive was not always required to prove an ERISA alter ego claim if the corporations in question shared common ownership but were not in a parent-subsidiary relationship.  See Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 308 (1st Cir. 1992).  In reaching this decision, however, the court stated that "we leave to another day the issue of what role anti-union animus would play in an ERISA suit for contributions to an employee benefit fund where liability is sought to be imposed on a parent company for the acts of its subsidiary on a veil piercing theory."  Id. at 308 n.8.  Thus, United Electrical remains good law and continues to be relied on by the circuit as a correct description of the federal common law veil piercing test.  See, e.g., InterGen N.V. v. Grina, 344 F.3d 134, 148-49 (1st Cir. 2003).

Construing the complaint in light of First Circuit precedent, it is evident that plaintiffs have not pled sufficient facts to state a claim that Tyco International is the alter ego of Tyco US. Plaintiffs do not allege a lack of corporate independence between Tyco International and its subsidiary except in conclusory terms. They do not assert that Tyco International acted with fraudulent intent when it adopted its corporate structure. Nor do they assert that Tyco US lacks sufficient assets to pay any judgment that might be entered against it. Instead, plaintiffs base their argument entirely on allegations that several officers of Tyco US also served as officers of either Tyco International or one of its other subsidiaries. Such allegations are not sufficient to state a viable alter ego claim. See InterGen, 344 F.3d at 149 ("[c]ommon ownership and common management, without more, are insufficient to override corporate separateness and pave the way for alter ego liability").

5. **Kozlowski's Statements**

Plaintiffs assert that Tyco International is liable on a *respondeat superior* theory for misstatements and omissions that Dennis Kozlowski, its former chief executive officer, allegedly

made to participants.  I have reserved judgment as to when an ERISA breach of fiduciary claim may be maintained using a *respondeat superior* theory.  Accordingly, I decline to dismiss plaintiffs' claims against Tyco International to the extent that they are based on Kozlowski's alleged misstatements.[6]

## B.    Section 404(c) Defense

Section 404(c) of ERISA provides fiduciaries with an affirmative defense to liability for injuries that are caused by a participant's exercise of control over assets in an individual account plan.  See 29 U.S.C. § 1104(c)(1).  Defendants argue that section 404(c) bars plaintiffs' claims because their losses were the result of their own poor investment decisions rather than defendants' misconduct.

A section 404(c) defense has four elements:  (1) the plan at issue must provide for individual accounts; (2) the plan must permit a participant to exercise control over the assets in his account; (3) the participant must actually exercise control over the assets; and (4) the loss or fiduciary breach on which the

---

[6]  I also decline to dismiss plaintiffs' claims against Kozlowski.  Whether he was acting in a fiduciary capacity when he made the statements that plaintiffs attribute to him presents a question of fact that must be resolved at a later date.

claim is based must result from the participant's exercise of control.  See id.

Regulations issued by the Department of Labor elaborate on the defense.  See 29 C.F.R. § 2550.404c-1.  These regulations state that the defense is unavailable if the fiduciary either exercised "improper influence" over the participant or concealed "material non-public facts" that it could have disclosed without violating federal or state law.  See 29 U.S.C. § 2550.404c-1(c)(2).

Although a defendant may raise an affirmative defense in a Rule 12(b)(6) motion, the court may not grant the motion unless the facts on which the defense is based are clear on the face of the complaint.  See Blackstone Realty, LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001).  Defendants cannot satisfy this standard here because I cannot determine from the complaint whether defendants exercised improper influence over the participants or concealed material nonpublic information from them.  Accordingly, I decline to dismiss the complaint pursuant to Section 404(c).

C.  **Count I**

Plaintiffs charge in Count I that defendants breached their fiduciary duties by negligently making material misstatements and

-23-

omissions concerning the Tyco Stock Fund.  They base their claim in large part on statements concerning Tyco International's financial condition that the company made in its SEC filings. Plaintiffs contend that these filings are attributable to the Committee because the Committee incorporated the filings by reference into Form S-8s, Form 11-Ks, Section 10(a) prospectuses, and SPDs.  Plaintiffs also rely on statements that Kozlowski allegedly made to participants concerning Tyco International's financial condition and certain statements concerning the risk characteristics of the Tyco Stock Fund that defendants allegedly made in several different Plan documents.  Defendants challenge Count I by arguing that the alleged misstatements and omissions are not actionable under ERISA.[7]

---

[7]  Defendants also argue that plaintiffs have attempted to attribute statements made by one defendant to other defendants who played no role in making or disseminating the statements.  29 U.S.C. § 1105 allows a fiduciary to be held liable for the misconduct of a co-fiduciary in certain circumstances but plaintiffs have not relied on this provision.  Nevertheless, as I have explained, it is conceivable that Tyco US could be held liable for the Committee's fiduciary breaches and Tyco International could be held liable for Kozlowski's fiduciary breaches on a *respondeat superior* theory.  Further, I have determined that the directors of Tyco US may be held liable for the Committee's fiduciary breaches under certain circumstances if they failed to properly oversee appointees to the Committee. Whether a particular misstatement or omission should be

I cannot evaluate defendants' argument on the present record.  Although the Supreme Court has determined that a fiduciary can be held liable if it intentionally makes material misstatements to participants in an effort to profit at their expense, see Varity Corp., 516 U.S. at 502, neither the Supreme Court nor the First Circuit has yet determined whether a breach of fiduciary duty claim can be premised on negligent misrepresentations.  Although other courts have recognized such claims in certain circumstances, see, e.g., Mathews v. Chevron Corp., 362 F.3d 1172, 1183 (9th Cir. 2004); Krohn v. Huron Mem. Hosp., 173 F.3d 542, 547 (6th Cir. 1999), I am reluctant to express a view on this issue without the benefit of an evidentiary record.

I am also uncertain as to whether defendants can be held liable for a failure to disclose material information.  The First Circuit has suggested that a fiduciary may have a duty to disclose material information if he has reason to know that the failure to disclose the information would be harmful and either a

attributed to a particular defendant under one of these theories is a question that can be resolved more reliably after the evidentiary record has been developed.

-25-

participant has specifically requested the information or the information concerns the plan as a whole.  See Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 114-15 (1st Cir. 2002).  I cannot determine whether the First Circuit's reasoning is applicable in this case because the parties have not attempted to address the issue by applying the criteria that the First Circuit suggests are dispositive.  Accordingly, I decline to dismiss Count I.

## D.    Count II

Plaintiffs claim in Count II that defendants are liable because they negligently allowed participants to invest in the Tyco Stock Fund even though they knew or reasonably should have known that it was an unreasonably risky investment.  Defendants challenge Count II on two grounds.  First, they argue that they cannot be charged with a breach of fiduciary duty for allowing participants to invest in the Tyco Stock Fund because the Plans did not give them the discretion to prevent such investments.  Second, they argue that the complaint does not sufficiently allege that defendants acted imprudently.[8]

_____

[8]  Defendants also claim that only the Committee can be held liable for the conduct on which the claim is based.  I agree that

-26-

## 1. Discretion to permit investments

Defendants contend that they could not have prevented participants from investing in the Tyco Stock Fund because the Plans required the Committee to offer the Fund as an investment option. Defendants base this argument on the Plan's definition of the term "investment fund," which states that "[t]he term 'investment fund' shall include a fund established by the trustee at the direction of the Committee, which shall be invested primarily in common shares of . . . Tyco International, Ltd. and short-term interest income vehicles." Plan II ¶ 1.23. In making this argument, however, defendants overlook the Plan provision that specifically describes the Committee's powers and responsibilities. That provision states that the Committee has the power "to select appropriate investment vehicles, which may

_____

the complaint does not sufficiently allege that either Tyco International or Kozlowski were responsible for allowing participants to invest in the Tyco Stock Fund. However, as I have explained, Tyco US could be held vicariously liable for the Committee's actions on a *respondeat superior* theory. Similarly, the directors of Tyco US could be liable for the Committee's actions if they breached their fiduciary duties with respect to the appointment and retention of Committee members. Accordingly, I dismiss Count II insofar as it asserts claims against Tyco International and Kozlowski but otherwise deny defendants' motions to dismiss this count.

-27-

include the Tyco Stock Fund . . . ." Plan II ¶ 8.4(J) (emphasis added). When these two provisions are read together, it is apparent that while the Tyco Stock Fund is an "investment fund," the Committee retains the power to determine whether participants should be permitted to invest in the fund. Thus, I reject defendants' contention that the Plans required that the Committee give participants the opportunity to invest in the fund.

## 2. **Negligence**

The complaint charges that defendants should have prevented participants from investing in the Tyco Stock Fund because they either knew or reasonably should have known that it was an imprudent investment. Plaintiffs support this claim by relying on multiple references in the public record during the class period in which commentators raised questions concerning Tyco International's accounting practices. They also base their claim in part on allegations that defendants either knew or should have known of the undisclosed looting and accounting fraud that allegedly was occurring at the company. According to plaintiffs, this combination of public and nonpublic information should have caused the defendants to realize that the Tyco Stock Fund was an imprudent investment.

-28-

Defendants argue that the evidence cited in the complaint will not support an imprudent investment claim. In making this argument they cite to case law that applies a presumption of reasonableness to a plan administrator's decision to invest in employer securities.[9] See, e.g., Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995); see also, Lalonde v. Textron, Inc., 369 F.3d 1, 3-4 (1st Cir. 2004). They also argue that plaintiffs cannot base their claim on nonpublic information because defendants could not authorize trading on the basis of such information without violating insider trading laws. I reject these arguments because the complaint is sufficient even if the presumption of reasonableness applies and plaintiffs are forced to support their claim solely with publicly available information.

---

[9] Plaintiffs argue that the presumption of reasonableness applies only to Employee Stock Ownership Plans ("ESOPs"). Because the Tyco Stock Fund is not an ESOP, they argue that the presumption does not apply. Defendants respond by arguing that the presumption applies to all "eligible individual account plans," see 29 U.S.C. § 1107(d)(3)(A), because all such plans are exempt from ERISA's diversification requirement. See 29 U.S.C. § 1104(a)(2); see also Wright v. Or. Metallurgical Corp., 222 F. Supp. 2d 1224, 1233 (D. Or. 2002). Because I would not dismiss Count II even if the presumption applies, I decline to resolve this dispute at the present time.

## E.    Available Relief

Defendants next argue that plaintiffs' claims must be dismissed because they seek a form of relief that is not available under ERISA.

ERISA authorizes participants to sue fiduciaries on behalf of a plan to recover losses to the plan that are caused by a breach of fiduciary duty.  See 29 U.S.C. §§ 1109 (a) and 1132(a)(2); see also Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985).  Although defendants argue that the complaint seeks to recover for losses suffered by participants rather than by the Plans, the complaint plainly seeks to recover on behalf of both the Plans and their participants.  Because the complaint seeks a form of relief that is available under ERISA, I decline to dismiss the complaint on this basis.  Whether plaintiffs will be able to prove that the Plans suffered cognizable losses and whether ERISA also permits plaintiffs to recover for losses that were suffered only by participants are questions for another day.

## IV.   CONCLUSION

For the reasons set forth in this Memorandum and Order I

grant defendants' motions to dismiss all claims against Bent, Heffernan, the former directors of Tyco International and the former officers of Tyco International other than Kozlowski.  I also dismiss Count II insofar as it asserts claims against Tyco International and Kozlowski.  Defendants' motions to dismiss (doc. nos. 8, 9, 10, 12, 13, and 14) are denied in all other respects without prejudice to their right to renew their arguments in properly supported motions for summary judgment after discovery has been completed.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

December 2, 2004

cc:  Counsel of Record